Rosalie M. KEIM, formerly known as Rosalie M. Brecht, Appellant,

v.

Harold William MATTES and Viola M. Mattes, his wife, Respondents.

No. 57799.

Supreme Court of Missouri, Division No. 1.

April 8, 1974.

William C. Maier, Dubail, Judge, Kilker & Maier, St. Louis, attorneys for appellant.

J. Lloyd Wion, Wion, Burke & Boll, Clayton, attorneys for respondents.

HIGGINS, Commissioner.

Action by plaintiff for reformation of warranty deed and for money had and received; and, after reformation, for partition of real estate. Counterclaim by defendants for partition and damages for breach of contract. The court reformed the deed to vest, instead of a life interest in plaintiff, a one-half interest in fee simple as a tenant in common in plaintiff, and a one-half interest in fee simple as tenants in common in defendants, ordered partition and awarded attorney fees arising out of the partition to plaintiff; and ordered distribution of the proceeds of partition one half to plaintiff and one half to defendants. All other relief sought by the parties was denied. Plaintiff appeals from denial of relief for money had and received, or for contribution; defendants appeal from the reformation and denial to them of attorney fees arising from the partition. The reformation changed the interest and title of the parties to the real estate in question, and the appeals were taken prior to January 1, 1972. Keim v. Mattes, 477 S.W.2d 744 (Mo.App.1972); Croy v. Zalma Reorganized School Dist. R–V, 434 S. W.2d 517, 518 [1] (Mo.1968).

In Count I of her petition plaintiff alleged: that she, on one side, entered into oral agreement with defendants on the other side, whereby each side would contribute one half the cost of a house and lot; that each side would be vested with a one-half interest as a tenant in common in the real estate, and that, instead, plaintiff was granted a one-half interest for her life

with power of sale and defendants were granted a one-half interest in fee simple and the remainder after plaintiff's life estate; that plaintiff relied upon defendants' representations in preparation of the deed; that plaintiff paid over $30,238.71 of the $40,228.71 purchase price of the property and improvements, including $10,124.35 paid on behalf of defendants; that defendants agreed to pay one half the total price of which they had paid $9,990.00 and had promised to repay the additional sum of $10,124.35 necessary to meeting one half the purchase price. The prayer was for reformation of the deed to reflect a one-half interest as a tenant common in plaintiff, and for judgment for the sum advanced in behalf of defendants.

In Count II plaintiff realleged her claim for reformation and prayed, after reformation, for partition of the property by public sale.

Defendants filed separate answers. Count I in each answer was a denial of the essential elements of plaintiff's petition, and allegations that the agreement for title between the parties was as granted by the deed; that defendants were to pay only the net sum realized from the sale of their home later determined to be $11,012.29; that defendants were to maintain the joint home and provide plaintiff with a home and meals; that defendants were induced by plaintiff to enter into the agreement. Count II recited the title as granted by the deed and denied plaintiff's standing for an action in partition. Defendants also filed a counterclaim. Count I alleged the plaintiff and defendants to be tenants in common in the described real estate, and the prayer was for partition of the property by public sale and a division of the proceeds one half to plaintiff and one half to defendants. Count II alleged that defendants entered into an agreement with plaintiff on her request whereby they sold their former home at a loss of $4,000 to help in the purchase of the house and lot in question with plaintiff who stated she did not intend to remarry and that the property on her death would be the property of defendants under the deed to the parties and upon consideration of defendants providing a home, companionship, and meals to plaintiff; that plaintiff failed to carry out the agreement to defendants' further damage of $20,000; that plaintiff remarried and permitted her husband to enter the premises in violation of the agreement to defendants' further damage of $6,000. The prayer was for the $30,000 damages.

By answer to defendants' counterclaim, plaintiff in Count I admitted that plaintiff and defendants were tenants in common in the real estate in question and reasserted her prayer for partition. In Count II she denied defendants' right to damages and asserted the statute of frauds as an affirmative defense to Count II of the counterclaim.

Plaintiff's version of these claims came primarily from Rosalie M. Keim. She is the aunt of Viola M. Mattes and the godmother of Debra Mattes, daughter of Viola and Harold William Mattes. She was widowed by the death of her husband, Fred A. Brecht, in 1963, but remarried to William L. Keim October 23, 1967. During a 5-month period in 1964 or 1965, Mrs. Mattes and her children, Debra and Harold, lived with Mrs. Brecht at her home at 10734 Leber Drive. Mr. Mattes was separated from the family and lived in his home at 5804 Crossmont. Mrs. Brecht and Mrs. Mattes had a joint savings account derived from Mrs. Brecht's funds. She trusted Viola and her husband. In the late fall of 1966 Mrs. Brecht and her friend, Helen Bachmann visited with Mr. and Mrs. Mattes at their home at 5804 Crossmont. Mrs. Brecht advised that she was not satisfied with her living arrangement and was looking for a home. Mr. Mattes stated they also were looking for a home because they needed more room. Mrs. Brecht suggested they look together. They agreed to look together and to move together. About a week later Mr. Mattes called Mrs. Brecht and she and Mr. and Mrs. Mattes had a discussion of a list of houses and

they looked at several. In the following weeks they looked at ten or fifteen homes and, on March 5, 1967, Mrs. Brecht placed a $50 deposit on the building lot in question. At that time, "everything would be half and half. The furthest they could go would be twenty thousand dollars. * * * Twenty thousand dollars of each would be the maximum." Mr. Mattes said "that each would own half and half." Mr. Mattes also said their part "would be paid after he had sold the property at 5804 Crossmont."

The house in question, 9374 Manoroak, was built by a developer under contract between the developer as one party and Mrs. Brecht and Mr. and Mrs. Mattes as the other for a price of $38,633 to which Mrs. Brecht added items totaling $1,824.71 and defendants added items totaling $974.36, a total cost of $41,432.07. Of this total, Mrs. Brecht paid $30,457.71; Mr. and Mrs. Mattes paid $10,974.36, ten thousand of which came from proceeds of sale of their property on Crossmont.

Mrs. Brecht and the Mattes family moved into the home at 9374 Manoroak and closed the sale June 22, 1967. Prior to the move Mr. Mattes called Mrs. Brecht. "* * * he said he'd like to go down, talk to Mr. Wion about that his part of the half of the house would be taken care of and that, also, the half of mine would be taken care of; that he'd see that it would be taken care of." Mrs. Brecht and Mr. Mattes made a date to meet with Mr. J. Lloyd Wion in his office. Mr. Wion previously had represented Mr. Mattes in a divorce suit. Mr. Mattes said "that he wanted to protect his half interest in the house in case there was an automobile accident with him and his wife, that his children would be taken care of; and then, that the other half, that my half would be taken care of. So then Mr. Wion asked me what I'd do with my half if anything would happen to me, so I just told him that if anything would happen to me, it didn't make any difference. If you're dead, you're dead." Nothing else was said

to the lawyer by either Mrs. Brecht or Mr. Mattes at this meeting. Harriet Batterberry was present at the closing on behalf of the seller. Mrs. Brecht gave her a cashier's check for $25,633, and she and Mr. and Mrs. Mattes executed and delivered a note and deed of trust for $10,000 covering the balance of the purchase price. Mrs. Brecht did not see the warranty deed at the closing, and first saw it when she received it from Mr. Mattes in August, 1967. Neither did she read the closing statement because "Harriet was in a hurry."

About two weeks after the move, Mrs. Brecht and Mr. Mattes had a discussion. He said, "I'll give you a thousand dollars and then a hundred dollars a month until the ten thousand dollars is paid up." No such paper was ever drawn, and no such sums were received by Mrs. Brecht. He arrived at the figure and how to pay, saying, "that's when they have the sale of their house." Later, in August, he told her he had eleven thousand five hundred dollars in the Crossmont property.

The house at 9374 Manoroak consisted of two bathrooms, four bedrooms, living room, dining room, family room, kitchen, breakfast room, and two-car garage, all on one level. The Mattes family occupied three bedrooms, one bathroom, and the kitchen. They had three automobiles. Mr. and Mrs. Keim, after their marriage October 23, 1967, occupied one bedroom, one bathroom, and the family room which they used as a kitchen. Little use was made of the living and dining rooms.

Mrs. Brecht moved into 9374 Manoroak June 22, 1967; Mr. Keim moved in October 24, 1967, following his marriage to Mrs. Brecht the previous day. They continued their residence through the trial of this case. The Mattes family moved in June 26, 1967, and moved out October 16, 1968, shortly before the trial.

Mrs. Brecht did not tell Mr. Wion or the realty company how to prepare the deed or that her half of the property was to go to the Mattes family. The Mattes children

were to get their parents' half. She never offered to buy a home and put it in the Mattes name. She wanted her half of the property to pass to her daughter and grandson. She never intended to have only a lifetime interest in one half of the property. Plaintiff did not see the deed until the month before she filed her suit. The deed from Papin Builders, Inc. conveyed the property at 9374 Manoroak, i. e., Lot 30 of Barrington Oaks, Plat 2, St. Louis County, Missouri, to "Harold William Mattes and Viola Mattes, his wife, and Rosalie M. Brecht, a single person, as tenants in common. The undivided one-half interest of Rosalie Brecht is for and during her natural life with power in her to jointly use and occupy the same for her sole and exclusive use with the further power conferred upon her to sell, mortgage or convey, or in any manner dispose of her fee simple interest to said premises and with the remainder or to any part undisposed of by her under the powers herein conferred to her to Harold William Mattes and Viola Mattes." This deed was prepared by Harriet Batterberry, a representative of the developer, Papin Realty Company, pursuant to instructions received from defendants' attorney, Mr. J. Lloyd Wion. She did not discuss the preparation with Mrs. Brecht. It was mailed to Mr. and Mrs. Mattes after Mrs. Batterberry had it recorded.

Plaintiff did not pay any of the utility expenses until the air-conditioning season in 1968. She did not eat any meals with them except two that she cooked using her food. She did pay some repairs. Plaintiff and defendants lived without differences until her marriage to Mr. Keim. Upon subsequent occasion, it became necessary to call the police.

Plaintiff acknowledged that at all times it was intended that defendants have an undivided one-half interest in fee simple in the property; the only conflict was whether her interest was for life with a power to sell or an undivided one-half interest in fee simple. She further acknowledged that

the transaction was based upon the parties' ability to pay, and that she never asked defendants for any money other than to pay the closing note.

According to Mrs. Bachmann the suggestion that the parties look for a home to purchase together came from Mr. and Mrs. Mattes.

William L. Keim executed an instrument April 30, 1968, to assent to conveyance of the Manoroak property by his wife Rosalie without further signature, consent, or approval. Mr. Keim was also present at a discussion in which Mr. and Mrs. Keim negotiated to purchase the interest of Mr. and Mrs. Mattes. Mr. Mattes claimed he had $11,500 in the property and Mrs. Keim offered him $2,000 more for their interest.

Mr. and Mrs. Mattes sold their property on Crossmont in May, 1967, without payment of any commission, for $18,750, out of which they netted $11,012.29 from which they paid the $10,000 note and secured release of the deed of trust on the Manoroak property.

Defendants' version of this controversy was represented by their testimony and that of their daughter, Debra.

Debra Mattes was present on one or more occasions when her aunt, Mrs. Brecht, was visiting her parents, Mr. and Mrs. Mattes, at the Crossmont address. "Mrs. Keim had come over to our house and offered that we move with her. And that as to how it should be settled, that we would sell our house and give whatever we sold it for and put it into the house we were to buy. * * * She said that she could pay the balance of the house. * * * if anything was to happen to her, the house, in its entirety, would go to us, because she didn't want us to have to move and sell it and put it in her estate * * *."

Viola A. Mattes stated the first discussion about the parties buying a house and living together occurred in January, 1967. "She said that she wanted someone to live with her, and why didn't we come and

move in with her. She had no one to live with and was fearful of apartment living; and if we would live with her, she would put the house in our names just so she would have someone to live with. * * * And we said that if she really wanted to do this, in order for us to feel like it was all of our homes, that we would sell our house and put the money that we had into the new house that we would buy. * * * it was to be as she said, a joint ownership, and we would have half of the house. * * * Mrs. Keim said that she wanted to live with us as a family and there would be no one else that would live in the house, other than Mrs. Keim, my husband, myself, and my son and daughter. * * * My husband was to do the maintenance work in the home. * * * Mrs. Keim said that she would pay half on these utilities, or pay a portion of the utilities." Mrs. Keim never asked her to make any payment on the home purchased on Manoroak.

Mrs. Mattes stated that she and her husband were claiming one half the proceeds of the sale of the Manoroak property despite the expenditure of a little more than eleven thousand dollars by herself and her husband, because "we lost our home in this deal * * *. And this is the way Mrs. Keim suggested this be arranged."

Mrs. Mattes stated she furnished meals or made them available to Mrs. Brecht, but that she ate out quite a lot. She offered no meals or services of any kind after the marriage of Mrs. Brecht to Mr. Keim. Mrs. Mattes acknowledged a dislike for her aunt after her marriage to Mr. Keim.

Harold Mattes said the discussion between him and his wife and Mrs. Brecht "was such that I would put in, or I had offered to put in my equity in the home on Manor Oak [Crossmont] into the purchase of a home and that Mrs. Keim would put in the balalnce; that she wanted to live with us for the rest of her life as a family. She related at that time that she had no in-

tention of remarrying * * * and she expressed the thought that she could be very happy living with us." They purchased the Manoroak property pursuant to this arrangement and everything went well until Mr. Keim moved in.

Mr. and Mrs. Mattes sold their Crossmont property without a sales commission for $18,750. They originally had asked $21,500 and had offered it to Mrs. Bachman for $19,000 or $19,500, and Mr. Mattes felt it had a market value of $22,500 if he had held it longer. He did not have it appraised prior to sale.

Mr. Mattes stated that he received a letter from Mr. Wion following the meeting he and Mrs. Brecht had with Mr. Wion. The letter outlined the manner in which each party would hold an interest in the property. The letter utilized the same language as that employed by Mrs. Batterberry in drafting the deed. Mr. Mattes did not show the letter to Mrs. Brecht.

In rebuttal, Frank A. Miller, Jr., a real estate appraiser, gave his opinion that the fair market value of defendants' Crossmont property in June of 1967 would have been $20,000.

Upon this evidence, the court found: (1) that the deed in question should be reformed to vest fee simple title in Harold William Mattes and Viola Mattes, his wife, as to one-half interest, and Rosalie M. Brecht, now known as Rosalie M. Keim, as to the other one-half interest, as tenants in common for the reason that it was the intention of the parties at the time the original purchase of the property was consummated that the plaintiff and the defendants should each own an undivided one half of the property as tenants in common; (2) that the property is subject to partition, but it is not susceptible to partition in kind; (3) that the interest of each of the parties in partition is one half to Rosalie M. Keim and one half to Harold William Mattes and Viola Mattes, his wife.

Pursuant to these findings, the court decreed the reformation sought by plaintiff; ordered public sale of the real estate conveyed by the deed as reformed; appointed a special commissioner to accomplish and report the sale, and hold the proceeds pending further order and decree of distribution.

The commissioner made his report showing purchase of the property at public auction by William L. Keim and Rosalie M. Keim for $35,000 subject to expenses, including taxes, incident to sale of $2,098.23.

The court approved the report, ordered the expenses of sale paid, and ordered the commissioner to execute the necessary deed to the purchasers.

The commissioner made application for fees showing his receipt of $35,000, together with an adjustment for real estate taxes of $220.08, less expenses of $2,098.23, court costs of $385.44, leaving a balance of $32,737.41; and prayed for a fee of $2,100, and for an order of distribution to the proper parties.

The court entered final decree, reciting the reformation, partition, sale, and balance for distribution; and ordered payment of $2,360 as attorney fees to plaintiff who brought the partition which was opposed by defendants, directed the final balance distributed one half to Rosalie M. Keim and one half to Harold William Mattes and Viola Mattes, his wife, and denied all other relief.

Defendants contend first that the court erred in reforming the deed as prayed by plaintiff because plaintiff's evidence did not sustain the burden of proof of fraud or undue influence. In support, defendants cite a number of well-known cases dealing with elements of fraud and undue influence and their proof, e. g., Lee v. Lee, 258 Mo. 599, 167 S.W. 1030 (1914); Wells v. Kuhn, 221 S.W. 19 (Mo.1920); Sebree v. Rosen, 349 S.W.2d 865 (Mo.1961); Steller v. Steller, 401 S.W.2d 473 (Mo.1966); Bross v. Rogers, 187 S.W. 38 (Mo.1916); Huber

v. Gershman, 300 S.W.2d 501 (Mo.1957); Elzea v. Dunn, 297 Mo. 690, 249 S.W. 933 (1923); Wallace v. Brown, 165 S.W.2d 408 (Mo.1942); Hughey v. Truitt, 196 S. W. 1065 (Mo.App.1917); Radford v. Radford, 388 S.W.2d 33 (Mo.1965); Thornburgh v. Warson Village Corp., 331 S.W. 2d 144 (Mo.App.1960).

The difficulty with this position is that the court did not invalidate the deed in question on grounds of fraud or undue influence. The court reformed the deed to conform to the intention and agreement of the parties. To accomplish this purpose, the court specifically reformed the designation of the grantees and the expression of their interests, i. e., "Harold William Mattes and Viola Mattes, his wife, and Rosalie M. Brecht, a single person, as tenants in common. The undivided one-half interest of Rosalie Brecht is for and during her natural life with power in her to jointly use and occupy the same for her sole and exclusive use with the further power conferred upon her to sell, mortgage or convey, or in any manner dispose of her fee simple interest to said premises and with the remainder or to any part undisposed of by her under the powers herein conferred to her to Harold William Mattes and Viola Mattes," "to vest fee simple title to said property in Harold William Mattes and Viola Mattes, his wife, as to one-half interest, and Rosalie M. Brecht, now known as Rosalie M. Keim, as to the other one-half interest, as tenants in common."

The expression of the interests of the grantees as originally drawn is, on its face, internally inconsistent with respect to the interest of Rosalie M. Brecht. The court was faced with the duty to reform such expression in the interest of accuracy and to reflect the intention of the parties. In the reformation decreed, the court obviously believed the version of the agreement and the parties' intention favorable to plaintiff. Walters v. Tucker, 308 S.W.2d 673, 675[2, 3] (Mo.1957). The court's finding on this score resolved all conflicts

in the evidence in favor of plaintiff, and that judgment does not appear clearly erroneous on this record. Rule 73.01(d), V.A.M.R.

■ Defendants contend second that the court erred in granting a decree of partition in favor of plaintiff because plaintiff as a life tenant under the deed did not plead or prove facts as required by Section 528.010, RSMo 1969, V.A.M.S., which requires a life tenant in an equitable partition to allege that the immediate enjoyment of the life estate is burdensome and unprofitable.

This position ignores that plaintiff pleaded her action in partition on the theory that she was the owner of an undivided one-half interest in fee simple as a tenant in common with defendants, and that when partition was decreed to her, she was in fact such a tenant in common by virtue of reformation of the deed by which she acquired that interest.

Defendants contend third that the court erred in refusing to grant the decree in partition and the attorney fees to them in that they were the holders of an undivided one-half interest in fee simple.

This contention assumes, as defendants did in their Point II, that plaintiff was not a tenant in common for purposes of bringing the action in partition, in order to argue that since they were so qualified, they, in fact, brought the partition and should have had the decree and attendant attorney fees.

■ It has already been determined that plaintiff was qualified to bring her partition suit, which she filed prior to defendants' counter-claim for partition; and it has long been the rule that the partition statute permits a reasonable fee to be taxed as costs for the attorneys bringing the suit. Padgett v. Smith, 206 Mo. 303, 103 S.W. 943, 946[7] (1907). The parties stipulated that the fee allowed was reasonable; the only question is the propriety of its award to plaintiff.

Defendants contend finally that the court erred in failing to award them damages for breach of the alleged agreement wherein plaintiff approached them asking that she be allowed to live with them because she did not intend to remarry and needed their family. They argue that they relied upon such agreement, sold their Crossmont home at a loss, lost the value of improvements and maintenance of the Manoroak home, and ultimately lost the enjoyment of the home.

■ The court made no findings with respect to this count of defendants' action; the court simply denied relief on that score. Defendants' argument does not lead to an entitlement to damages as a matter of law. To the contrary, there was conflicting evidence on the questions of the alleged agreement, its breach, if so, and resultant damages, if any; and the court's resolution of those issues does not appear clearly erroneous on this record. Rule 73.01 (d), supra.

Plaintiff contends that the court erred in failing to enter judgment for her for $9,741.67 (from defendants' portion of the distribution) on her count for money had and received, on the theory that she paid that sum at the express or implied request of and for the benefit of defendants.

Alternatively, she contends that the court erred in not distributing the proceeds of the sale on the basis of the contributions made by plaintiff and defendants.

Plaintiff argues on her first contention that there is no question that in her total payment of $30,457.71 toward the $40,000+ purchase price of the Manoroak property, she paid money for the use and benefit of defendants. She computes that she paid in $19,482.35 more than did the defendants, and yet each side was vested with a one-half interest in the property. Therefore, defendants received a benefit of $9,741.67.

Plaintiff admits that the question of a request from defendants is not easy to resolve; but asserts that if her testimony is believed, the defendants did make the necessary request, and this is further supported by the evidence of a promise to pay $10,000 in installments attributed to Harold Mattes by Mrs. Brecht.

On her second contention, plaintiff would have the court apply the rule of apportionment of partition proceeds on the basis of contributions of each of the parties toward the acquisition of the property. See Anderson v. Stacker, 317 S.W.2d 417 (Mo. 1958). On this theory plaintiff asks that she be awarded $30,457.71/$41,432.07 of the purchase price, and that defendants be awarded the balance of $10,974.36/$41,432.-07 of the purchase price.

As previously noted, and as the statement demonstrates, there were conflicts in the evidence on all issues for the trial court to resolve. In the resolution of the conflicts and issues the court accepted plaintiff's version of the respective interests of the parties, i. e., an undivided one-half interest in fee simple to each side and reformed an inaccurate deed to that end. In apportioning the proceeds of the partition sale, the court awarded one half to each side consistent with the interests of the parties as shown by the deed reformed as prayed by plaintiff. The court chose to believe defendants' version of the facts with respect to the amount of contribution they were to make toward their undivided one-half interest, i. e., that they were to contribute the equity in their Crossmont home and to provide the maintenance of the Manoroak home. The simple comparison of respective contributions may appear at first to be disparate; but, had the arrangement bargained for by plaintiff continued, defendants' contributions by way of maintenance would soon have caught up with the monetary contribution of plaintiff.

In the circumstances and on the record of this case, it may not be said that the court was clearly erroneous in distrib-

uting the partition proceeds in equal shares to equal interests in line with the rule of distribution generally employed in partition actions. Devoto v. Devoto, 39 S.W.2d 1083 (Mo.App.1931); Rule 73.01(d), supra.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.