Clarence CROY and Patsy Croy, Appellants,

v.

ZALMA REORGANIZED SCHOOL DISTRICT R–V OF BOLLINGER COUNTY, Missouri, a Political Subdivision and Municipal Corporation of Missouri, Respondents.

Charles M. Wagner and Reeda E. Wagner, His Wife, Intervenors.

No. 53545.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1968.

Elvis A. Mooney, Bloomfield, for plaintiffs.

Kenneth W. Shrum, Marble Hill, for interveners.

HOUSER, Commissioner.

Suit in equity to reform a deed conveying one acre of land in Bollinger County. Clarence Croy and wife, the named grantees, sued the grantor, a school district, for a decree compelling grantor to execute a new and reformed deed to include additional real estate the record title to which was in Charles M. Wagner. Wagner and his wife were permitted to intervene to set up a defense. Plaintiffs, denied relief, have appealed.

Appellate jurisdiction is in this court. The object of this suit is to secure a decree compelling the district to convey, in addition to the one acre described in the deed, additional adjoining land the record

title to which is in intervenor. Plaintiffs claim that the school district acquired this additional land by adverse possession and that it was intended to be included in, but by mutual mistake was left out of, the grant. If plaintiffs should prevail title to this additional land would be taken from defendant's record title and transferred to plaintiffs. Title to real estate, therefore, is involved within the meaning of Article V § 3 of the constitution, V.A.M.S. Phillips v. Cope, Mo.App., 104 S.W.2d 276.

On this de novo review, on disputed evidence, we find these facts: J. C. Wagner, father of intervenor Charles M. Wagner, owned the quarter quarter section in which the land in question is situated. In 1916 J. C. Wagner conveyed as a gift to the then-existing school district (of which defendant district is the successor) a one-acre tract of land out of the quarter quarter section, described by metes and bounds. A frame schoolhouse, moved onto the northeast corner of the one-acre tract, was used for school purposes until 1939 or 1940. Then a new concrete and brick schoolhouse was erected at a point some 50 feet north of the north line of the one-acre tract. Charles M. Wagner, present at the time the site for the new building was decided upon, informed the representatives of the school district that the proposed site was not on the one-acre tract. His brother William disputed Charles, stating that he knew where the corner was, and pointing out what he considered was the corner. The new school building was erected on land then belonging to J. C. Wagner, a fact established by two subsequent surveys. School was conducted in this new building until 1952, when school was discontinued there because of the reorganization of the school district. In 1956 the district advertised for sale "Concrete school and two toilets and one acre (more or less) of land." At that time Charles M. Wagner advised a member of the school board that the building had not been erected on the one-acre tract owned by the district. As a result of that conversation two members of the board, the county surveyor and Charles M. Wagner went to the school site and made a survey, which indicated that the building was not built on the one-acre tract. The school board and the community in general had doubts about whether the building was on the school lot. No bids were received. Thereafter Charles M. Wagner and his relatives mowed the grass, cleared brush around the building, moved in furniture, made repairs, did some painting, installed a gas furnace, planted pine trees around the building and began using it as a clubhouse. In 1966 the school board decided to readvertise its property for sale. The members of the board in 1966, knowing of the dispute as to the location of the building and having "discussed that the building might not be on the acre", gave newspaper notice that the district would receive bids "toward the sale of one acre of land known as the Pond Creek School grounds. Complete description of this parcel may be found in Book 20, page 316, located in the Bollinger County Recorder's office. Quitclaim deed will be provided by the school district * * *" Three bids were received. J. C. Wagner, son of Charles M. Wagner, bid $101. One Sturgeon bid $30. Plaintiff Clarence Croy bid $125. The board accepted Croy's bid and the school district executed and delivered to the Croys a quitclaim deed to the one-acre tract. The description in the quitclaim deed, in words and figures, was the same as in the original deed made by J. C. Wagner to the district in 1916, except that a mistake was made in one of the calls whereby the quarter quarter section was mistakenly described as "Southwest" whereas it should have read "Southeast." It was the intention of the parties that the word "Southwest" read "Southeast." The Croys took possession and ejected intervenors' furniture and effects from the building. The Croys subsequently caused the land described in the deed to be surveyed. Their surveyor found the building to be off the land described in the deed. Clarence Croy then had another acre surveyed immediately north of the described acre and brought

this suit to reform the deed so as to include the land on the north upon which the building was erected. Clarence Croy considered the value of the building to be $5,000.

Plaintiffs sought reformation on the ground that the parties entered into the deed in question by mutual mistake of fact. The petition alleged that school district and plaintiffs acquired title to the land adjoining the one-acre tract by adverse possession; that school district intended to convey and plaintiffs intended to bid on and buy the land and building, including both the one-acre tract and the adjoining real estate on which the school building was erected, but that by mutual mistake of fact the deed erroneously described only the one-acre tract, and should be reformed to describe the one-acre tract plus the adjoining land acquired by school district and plaintiffs by adverse possession. The school district filed no pleading. Intervenors' answer was a general denial. The court found the issues for school district and intervenors.

■ The central issue is whether the parties intended that the land adjoining the one-acre tract be included as a part of the land to be sold and conveyed. To prevail it was incumbent upon plaintiffs to prove by clear, cogent and convincing evidence, Allan v. Allan, Mo.Sup., 364 S.W.2d 578 [1]; Walters v. Tucker, Mo.Sup., 308 S.W.2d 673, 679 [7], (1) that the school district acquired the adjoining land by adverse possession and (2) that the parties intended that the adjoining land be included in the deed.

■ Plaintiffs failed to meet the burden of proving that the parties intended to include the adjoining land in the quitclaim deed or that it was omitted by mutual mistake of fact. We find to the contrary that all parties concerned entertained grave doubts and were in a state of uncertainty on the question whether the building was located on the one-acre tract or on privately owned ground; that the one-acre tract

was advertised, bought, sold and conveyed without any intention on the part of seller or buyers that any land other than the one-acre tract be transferred, and that grantors intended to convey and grantees expected to receive title to the school building only if it proved to be located on the one-acre tract.

None of the school directors in 1966 knew whether the building was on the one-acre tract. They were uncertain about the question. They had been told by Charles M. Wagner that it was not. They had heard about the 1956 survey, which revealed that it was not. They knew that the community in general entertained doubts on the question. They discussed the question in their meeting. They did not claim, assert or understand that the district had obtained title to the adjoining land by adverse possession. [The argument portion of appellant's brief opens with a concession that "the directors may not have understood that the district had acquired title to part of the area by adverse possession."] The directors "assumed" that the building was on the one-acre tract but were uncertain. They intended to sell the land described by metes and bounds in book 20, page 316 and no other land; to sell whatever the district then owned— what they had, "as described in this deed." They carefully worded the notice of sale to restrict the offer to the one-acre tract. Because of their uncertainty about the location of the building they made no representations with respect to the building, and intentionally excluded the building from the notice of sale. [In contrast to the action of the 1956 board in including the building in the sale notice, an action taken prior to the conduct of the 1956 survey which disclosed that the building was not on the one-acre tract.] In order to be on the safe side they carefully provided for the giving of a *quitclaim* deed. The intention of the directors with respect to the building was stated by the president of the board. Asked whether they sold the building or sold the acre of ground he answer-

ed, "We sold the legal description to the acre we had, assuming that the building was on it * * * if the legal description contained the building, it was his." Another director testified: "We were selling an acre of land that we thought possibly might be where the building sat, but we were in doubt." A third director said: "All we was selling was the original deed * * * whether the building was on it or not." In other words, if the building was located on the one-acre tract the directors intended to sell the building with the tract; if the building was not located on the one-acre tract they did not intend to sell the building.

Nor did Clarence Croy, in making the bid and accepting the deed, know whether the district owned the building. He was equally uncertain about the matter. Prior to the time he made his bid Clarence Croy had been informed by several different people that the school building was not located on the land being sold; that there was doubt about it and that "it had been contested." He had previously negotiated with Charles M. Wagner (who in the meantime had acquired the quarter quarter section by mesne conveyances from the other heirs of his father) for the purchase of the schoolhouse building. He knew that the directors did not know whether the building was on the one-acre tract. Croy was fully aware of the doubts and disputes about the matter. The size of the bid ($125) confirms the fact that Clarence Croy did not seriously consider that he was bidding for land on which a building worth $5,000 was located.

■■ The directors intended to sell and purchasers intended to buy the parcel described by metes and bounds at book 20, page 316 of the land records. With their eyes wide open both parties took a chance on whether the building went with the one-acre tract or not. Clarence Croy took a chance on an uncertainty—the possibility of picking up a valuable building at a bargain price—and lost. There was no mis-

take in reducing the actual agreement of the parties to writing. "Equity will entertain a bill to reform a contract only if the mistake is mutual, i. e., if the contract has been written 'in terms which violate the understanding of both parties.'" Herhalser v. Herhalser, Mo.App., 401 S.W.2d 187, 192. The terms of the deed do not violate the understanding of the parties with respect to what was being sold and conveyed. The contract upon which the parties agreed was contained in the quitclaim deed (with the exception of the scrivener's mistake in the call for the Southeast quarter). The grantees are not entitled to reformation to make certain now what was uncertain when the parties contracted.

■ In Hereford v. Unknown Heirs of Tholozan, Mo.Sup., 315 S.W.2d 412, an effort was made to reform a quitclaim deed on the ground of mutual mistake as to the interest owned by grantor; the theory being that she had conveyed her interest in the property believing that she had a life estate when in fact she had a fee interest. Because the evidence indicated that the parties knew they were dealing with an uncertain interest the court refused reformation, saying, l.c. 419: "It appears to us therefore that the parties to the quitclaim fully recognized that they were dealing with an uncertain interest and realized that the 'fact' of what estate Eulalie took under Item Fourth was not established. 'Where there is a mutual recognition of the uncertainty of a given fact there is no mistake however the fact may turn out to be, and no ground for equitable relief.' 30 C.J.S. Equity § 47(1), p. 375." (Now 30 C.J.S. Equity § 47(1), p. 864.) Equity will not interfere where parties make contracts or other dispositions as to boundary lines on the basis of mistaken assumptions, uncertainties or contingencies, well knowing at the time that they might be mistaken, especially where the precise location of boundary lines may readily be ascertained by a survey. Board of County Com'rs of Delta County v. Board, etc. of Gunnison County, 17 Colo. 41, 28 P. 476.

**522**

With the storm signals up plaintiffs easily could have settled the uncertainty and ascertained the truth of the facts by having the property lines surveyed before making their bid but they did not do so. Equity will not relieve against mistake when the complaining party had within his reach the means of ascertaining the true state of facts and, without being induced by the other party, neglected to avail himself of his opportunities of information. Brown v. Fagan, 71 Mo. 563; Barrett, Fitch, North & Co. v. Hudson, Mo.App., 403 S.W.2d 944, 947 [2].

The court properly refused to reform this quitclaim deed.

Much of appellant's testimony and argument is devoted to the contention that the school district acquired the ground surrounding the school building by adverse possession. There is no necessity of deciding that question in this case. Plaintiffs failed to establish the foundation stone of their cause of action, namely, that by mutual mistake the quitclaim deed failed to memorialize the transaction upon which the parties agreed. Since the quitclaim deed accurately recorded the agreement it is irrelevant in this case whether the school district or Charles M. Wagner owns the school building. In either event appellants do not own it. Appellants' argument that it is inequitable for Wagner to receive a $5,000 building for nothing is irrelevant, since we are not deciding the issue of ownership as between the school district and Wagner.

 The judgment of the trial chancellor was correct on the principal issue. The decree, however, fails to reform the deed to change the word "Southwest" to "Southeast" in the call at the beginning of the metes and bounds description. Clearly plaintiffs are entitled to this relief to conform to their prior agreement. Federal Land Bank of St. Louis v. McColgan, 332 Mo. 860, 59 S.W.2d 1052. Accordingly, the decree is reversed and the cause is remanded with instructions to enter a new decree

denying the principal relief sought, on the grounds indicated, but reforming the deed to correct the scrivener's mistake referred to above, costs to be divided equally between plaintiffs and school district.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.