Stanley J. SHEINBEIN,
Plaintiff-Respondent-Cross-Appellant,

v.

The FIRST BOSTON CORPORATION,
Defendant-Appellant.

No. 45536.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 21, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1984.

Application to Transfer Denied
June 19, 1984.

J. Richard McEachern, St. Louis, for defendant-appellant.

Charles A. Weiss, Bryan, Cave, McPheeters & McRoberts, St. Louis, for plaintiff-respondent-cross-appellant.

RICHARD J. MEHAN, Special Judge.

This case is here on an appeal and cross-appeal from a judgment rendered in the Circuit Court of the County of St. Louis.

Plaintiff-respondent, Stanley J. Sheinbein, brought suit against defendant-appellant, The First Boston Corporation, for breach of a sales contract calling for the sale of 250 debentures to the plaintiff. The jury returned a verdict against defendant-appellant in the amount of $12,500 plus prejudgment interest. That amount was just half of the $25,000 prayer that plaintiff-respondent had sought. The trial judge entered judgment on that verdict. Defendant-appellant appeals from that judgment. Plaintiff-respondent has cross-appealed only on the trial court's failure to direct a verdict as to the damages.

In this opinion, the defendant-appellant will be referred to as the defendant, and the plaintiff-respondent, who is also the cross-appellant here, will be referred to as the plaintiff.

The evidence shows that plaintiff was the Corporate Assistant Treasurer for the McDonnell-Douglas Corporation, and in the past had traded with the defendant on behalf of both the Corporation and himself. The defendant is a large investment banking and brokerage firm, headquartered in New York City. On December 15, 1976, Richard Knies, an employee of defendant, telephoned the plaintiff offering to sell 250 McDonnell-Douglas subordinated convertible debentures, 4¾%, due July 1, 1991, for the sinking fund requirement of McDonnell-Douglas, at a price of $790 per bond. The plaintiff refused this offer, stating that the company had already met its sinking fund needs. After further conversation with Knies, during which time the plaintiff asked several times if the price was $790, the plaintiff accepted the offer of 250 debentures at $790 each, and asked to have the figures worked up that same day. Knies called the plaintiff later on the same day and offered an additional 250 debentures for the same price. At that time plaintiff spoke to Knies' trader, Brett Haire, to make certain that the defendant did not place more securities on the market, as this could affect the value of the plaintiff's purchase. Nevertheless, the plaintiff declined this second offer. Later that same day the plaintiff was contacted

by Alden Siegel, who identified himself as Knies' superior. Siegel indicated that an error had been made and that the bonds would cost $100 more per bond if the plaintiff still wanted them. The plaintiff refused stating he had already purchased them at $790. On the same day, December 15th, Bruce Pereyra, head of the defendant's bond department, telephoned the plaintiff to tell him the defendant's position was that there was no sales agreement.

Other evidence at the trial indicated that a memorandum to defendant's attorney had been prepared by Knies several days after his original telephone conversation with the plaintiff. The memorandum confirmed the offer of 250 bonds at $790, but also indicated that there was some confusion in Knies' mind as to the buyer's identity. After the second phone conversation with the plaintiff, Knies became aware that the buyer was not McDonnell-Douglas, but instead at that point may have believed the buyer to be the St. Louis County National Bank.

With regard to the issue of damages, the evidence showed that on December 15, 1976, the debentures were selling at a price of 88½, almost ten points above the price of 79 (translating to $790) quoted to the plaintiff. The debentures were ultimately sold by the defendant for 88¾. There was also testimony by Edward Doering, an accountant employed by McDonnell-Douglas, that plaintiff had available to him a daily summary of the price of McDonnell-Douglas common stock, from which the price of debentures could be computed with substantial accuracy.

■ We will first examine the issue which we find disposes of this appeal and cross-appeal. The defendant claims as error the trial court's giving on its own motion instruction No. 8, an affirmative defense instruction. We agree that such action was prejudicial error. For an easier understanding of that error we set out here that instruction.

Your verdict must be for defendant if you believe:

First, the price to be paid by plaintiff for the 250 McDonnell-Douglas Corporation 4¾ subordinated convertible debentures formed the basis of the transaction between plaintiff and defendant, and

Second, at the time defendant offered to plaintiff the 250 McDonnell-Douglas convertible subordinated debentures it intended to offer them at a price of $890 per debenture rather than $790 per debenture, and

Third, at the time plaintiff accepted the offer he knew that defendant intended to offer the debentures at a price of $890 per debenture rather than $790 per debenture.

The instruction did not reflect the evidence and it did not correctly state the applicable law. It cannot realistically be read to cause any benefit to the defendant. There was no evidence on which the jury could find that the plaintiff knew, at the time he accepted the offer, that the defendant intended to offer the debentures for $890 per debenture rather than the stated price of $790. However, there was evidence from which a jury, if properly instructed, could have found that the price quoted was the result of a unilateral mistake by the defendant as offeror. The jury was misdirected when it was advised by the instruction that a defense based on mistake was only available if the plaintiff knew the defendant intended to quote a price of $890. That is not a correct and adequate statement of the law or the facts. The jury should have been instructed that its verdict should be for the defendant if under the evidence the jury believed that the plaintiff knew or had reason to know that the offering price was not a reasonable price and resulted from a mistake by the offeror.

▪ We now turn to the question of whether the defendant may raise the issue of its unilateral mistake as a defense in an action at law. It is well established that relief may be granted in a court of equity in rescission cases where a unilateral mistake has been made. *Employers Indemnity Corporation v. Garrett*, 327 Mo. 874, 38 S.W.2d 1049 (1931).

The appellate courts have already allowed certain defenses, usually considered as equitable defenses, in actions at law in contract. In *S⸺ v. W⸺*, 514 S.W.2d 848 (Mo.App.1974), a three count filiation proceeding, a jury was called to try the fact issues. On count two, a claim for a money judgment based on a support contract and a breach thereof by the alleged father, the trial court submitted a verdict director on that count and an affirmative defense instruction. The latter instruction presented the issue of duress in that the defendant was subjected to threats and did not therefore voluntarily enter into the support contract.

▪ A unilateral mistake may also be used as an affirmative defense to an action at law. See *Stahly Cartage Co. v. State Farm Mut. Auto. Ins. Co.*, 475 S.W.2d 438 (Mo.App.1971). In that case Stahly settled a property damage claim against one Riegel with Riegel's insurance carrier. Through a computer error, the carrier agreed on a settlement in excess of its policy limits. On discovery of the error, it refused to honor the settlement. In a subsequent suit by Stahly, the carrier was allowed to assert a unilateral mistake defense. The defense was unsuccessful since Stahly did not know and had no reason to know of the mistake.

▪ It is clearly the rule that in the case of reformation the presence of unilateral mistake alone is not an adequate base for a reformation decree. *Rainey v. Foland*, 555 S.W.2d 88, 91 (Mo.App.1977). Missouri Civil Actions, Volume I, The Missouri Bar (1980), Section 3.36. However, in the case of rescission or cancellation of a contract a mistake by one party and either knowledge of that mistake by the other party or a mistake of such a nature that it must have been known to the other party may be a ground for rescission. The mistake must be on a vital matter so that the court could believe the parties never actually agreed to the contractual elements. *Saline County v. Thorp*, 337 Mo. 1140, 88 S.W.2d 183 (1935). Missouri Civil Actions,

Volume I, The Missouri Bar (1980), Section 7.48.

■ A party seeking rescission must act promptly on discovering the reason and need for his rescission. He must act before the other party has changed his position or is placed in a position where he would be prejudiced by a rescission or where a third party would be harmed by a rescission. *Blakeley v. Bradley*, 281 S.W.2d 835 (Mo.1955). Under the evidence in this case notice of rescission was promptly given and an acceptance of the notice by the plaintiff would limit the loss to plaintiff's loss on the agreement. It is important to note from the evidence that the plaintiff has not shown a change of position as a result of the alleged sale agreement. Further, it is observed that the mistake appears to have been a clerical or computational error and not a judgmental error. Additionally, the error appears to have been palpable in that the error or mistake was such that it might be held that the plaintiff knew or had reason to know of its existence. Such a question should have been submitted to the jury by a proper instruction.

The right of the defendant to submit the unilateral mistake defense, arising out of the facts of this case, is reflected in Section 153, Restatement of Contracts, 2nd:

When Mistake of One Party Makes a Contract Voidable

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performance that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and

. . . . .

(b) the other party had reason to know of the mistake or his fault caused the mistake.

We find that under the facts elicited in the trial of this case Section 154 of the above is not a bar to relief here under Section 153.

The rule of law relied on by the defendant is well stated in *Frederich v. Union Electric*, 82 S.W.2d 79 (Mo.1935):

"Reformation, and ordinarily rescission or cancellation, is only granted where there is a mutual mistake. However, there are exceptions made to these general rules in cases where the mistake of one party is either known to the other party or is so obvious, under the circumstances, that it must have been known to him, and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition. The rule applicable to this kind of a case is stated in 6 R.C.L. 623, § 42, as follows: 'If one of the parties, through mistake, names a consideration that is out of all proportion to the value of the subject of negotiation, and the other party, realizing that a mistake must have been committed, takes advantage of it, and refuses to let the mistake be corrected when it is discovered, he cannot, under these conditions, claim an enforceable contract. Where there is a mistake that on its face is so palpable as to place a person of reasonable intelligence upon his guard, there is not a meeting of the minds of the parties, and consequently there can be no contract.'"

■ A unilateral mistake of fact, which satisfies the *Frederich* rule, and which is to serve as the basis of a defense to the enforcement of a contract must be a mistake as to a fact which enters into and forms the very basis of the contract. *Smith v. Githens*, 271 S.W.2d 374 (Mo.App. 1954). The dollar variation between the quoted sales price and the probable market price of those 250 debentures certainly satisfies that standard.

Accordingly, we believe that the facts in this case afforded the opportunity to the defendant to submit an affirmative defense instruction. That instruction could bring into question the issue of whether or not there was a contract. It could permit a jury to find the absence of assent by the plaintiff if he knew or had reason to know

that the stated offering price was the result of a clerical mistake.

We now consider the trial court's role in drafting and giving *sua sponte* instruction No. 8. There is no duty on a trial court to prepare a party's instructions. *Parker v. Wallace*, 431 S.W.2d 136, 139 (Mo.1968). There also is generally no duty on a trial court to offer to correct an instruction offered by a party. *Wors v. Glasgow Village Supermarket Inc.*, 460 S.W.2d 583, 589 (Mo.1970). In a general sense, each and every instruction given by the court, whether the party or the court prepares the instruction, is the court's instruction. Rule 70.02. *Arnel v. Roettgen*, 530 S.W.2d 20, 22 (Mo.App.1975). When the court drafts and gives an affirmative defense instruction, not offered by a party (and not a mandatory instruction as in the case of a burden of proof instruction), it is required to give a correct one. The court acted on its own in drafting instruction No. 8 and submitting it and having assumed that duty, it should have properly discharged it. This is not a case of "invited error."

There is nothing more firmly entrenched in the law than the requirement that issues submitted in instructions to the jury be supported by evidence from which the jury could reasonably find on the issue. An instruction which is not supported by the evidence is erroneous in that it is misleading and confusing. *Brassfield v. Sears*, 421 S.W.2d 321, 323 (Mo.1967); *Dickey Co., Inc. v. Kanan*, 537 S.W.2d 430 (Mo.App.1976). A proper instruction submits to the jury only ultimate issues, not evidentiary details. This is done to avoid undue emphasis of certain evidence, confusion and favoring one party over another. *George v. Gross and Janes Co.*, 634 S.W.2d 579 (Mo.App.1982).

Where an instruction is given which authorizes a verdict for a party, as is the case with instruction No. 8, it must submit and require a finding of the ultimate facts necessary to sustain that verdict. A failure in that regard is error. If that verdict becomes the verdict of the jury, the instruction must be presumed to be prejudicial. *Grindstaff v. Tygett*, 655 S.W.2d 70 (Mo.App.1983). In the case before us the trial court did not submit in instruction No. 8 the ultimate facts on which the jury could have found whether or not the plaintiff knew or had reason to know the offer to sell at $790 per debenture was a clerical error. Therefore, we reason that the jury's finding against the defendant resulted from such a defective instruction and the instruction must be presumed prejudicial. We paraphrase the rule set out in *Moloney v. Boatmen's Bank*, 288 Mo. 435, 232 S.W. 133, 140 (1921) and cited in *Grindstaff, supra* at 74, in this manner: When an erroneous defense instruction is given by the court and not by the defendant and the trial results in favor of the party against whom that instruction was directed, the presumption is that the erroneous instruction was prejudicial.

It is reasonable to assume that by directing the jury to find for the defendant only if it believed that the plaintiff knew that the defendant intended to sell the debentures at a $890 price, the trial court clearly confused and misdirected the jury. Accordingly, we must assume the very reasonable probability that the jury did not consider fully and fairly the plaintiff's possible knowledge that the defendant had through a clerical mistake announced an incorrect price.

The issue that should have been submitted in the instruction would have called for the jury to determine whether or not the communicated offer for the sale of the debentures at $790 each was an unreasonable offer in the light of then market conditions as known by the plaintiff. If the plaintiff knew the market conditions, and knew or had reason to know that the offer was unreasonable, then the jury verdict under such an instruction should be for the defendant.

For the foregoing reasons, we find Instruction No. 8 was prejudicially erroneous and therefore the judgment for the plaintiff should be reversed.

Solely for the purpose of explication and possibly to avoid certain issues and matters being resurrected in the event of a retrial and another appeal, we will consider some of the other issues presented in the appeal and the cross-appeal.

■■■■■ At the outset, we should comment on the nature of the mistake that may be suggested by the evidence. The position of the defendant that the making of the agreement involved a mutual mistake of the parties is simply not supported by the evidence. The only evidence on mistake is that the defendant made a unilateral mistake when it offered debentures at $790.00 per debenture. A mutual mistake was defined in *Housden v. Berns*, 241 Mo.App. 1163, 273 S.W.2d 794 (1954), as a "... mistake shared by both parties" and "a mutual mistake is one common to both or all parties where each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." A unilateral mistake in the making of a contract is a mistake on the part of one of the contracting parties only. *Employers' Indemnity Corporation v. Garrett*, 327 Mo. 874, 38 S.W.2d 1049, 1053 (1931).

■■■■ The defendant's first issue on appeal was that there was no credible evidence to support the submission to the jury of the plaintiff's claim that the parties had entered into a binding sales agreement. A review of the transcript clearly shows that at least a prima facie case was made. Admittedly, there is a dispute in the evidence as to whether the defendant knew the plaintiff was the actual purchaser. There is also a conflict in the evidence as to whether the plaintiff was aware of a possible clerical error in the offering price.

The defendant's second appeal issue was its claim that the plaintiff should not prevail as there was no compliance with the statute of frauds, Section 400.8–319, RSMo 1978. The defendant's position that the trial court's failure to give its affirmative defense instruction on the statute of frauds violation was prejudicial error is not tenable. We will not dissect that instruction here, but hasten to add that it does not properly present the issue. The copy of the instruction that appears at page 81 in the legal file does not clearly indicate that it was refused. The handwritten comments on it contain one group of letters which could be read as the word "refused." The transcript of the instruction conference at page 274 contains the only reference to this instruction as being refused. Nothing else appears on the question in the record.

Under *Leeson v. Etchison*, 650 S.W.2d 681 (Mo.App.1983), and *Cargill Inc., Commodity Marketing Div. v. Hale*, 537 S.W.2d 667 (Mo.App.1976), we find no error in the refusing of that instruction by the trial court, assuming it was refused.

■■■■ The evidence at trial by the defendant's employees' deposition testimony and a memorandum, exhibit # 3, dated December 17, 1976, introduced by the plaintiff, constitute admissions that a contract was formed absent the unilateral mistake defense. The statute of frauds defense is thereby rendered inadmissible. The type of statements made by Richard Knies and Alden Siegel during questioning are not unlike the questions and answers reported in *Cargill Inc., Commodity Marketing Div. v. Hale, supra* at 669. In this case the testimony established that an offer was made by the defendant through Richard Knies for the sale of 250 debentures at $790.00 each, which was accepted by the plaintiff. We also note that pleading the statute of frauds alone is not sufficient to maintain it as a valid defense. The defendant's failure to object to offered evidence of the oral agreement constituted a waiver of the protection of the statute. *Justus v. Webb*, 634 S.W.2d 567, 569 (Mo.App.1982).

The defendant also objected to the giving of instruction No. 6, the plaintiff's verdict director. We set out that instruction here:

Your verdict must be for plaintiff if you believe:

First, defendant on December 15, 1976 offered to sell to plaintiff 250 McDonnell-Douglas Corporation 4¾% subordinated

convertible debentures at a price of $790 per debenture.

Second, plaintiff on that same day accepted such offer and agreed to purchase from defendant the McDonnell-Douglas Corporation subordinated convertible debentures at a price of $790 per debenture.

Third, defendant failed to perform its agreement.

Fourth, plaintiff was thereby damaged. Unless you believe plaintiff is not entitled to recover by reason of Instructions No. 7 and 8.

It is not clear from the legal file or the transcript as to how the court or parties identified the instruction or on what model this instruction was based. The alleged contract was: bilateral in form, involved an issue of a breach, was without performance by either party, its existence and terms are in dispute and it was not submissible under *quantum meruit.* Therefore, MAI Nos. 26.01, 26.02 and 26.05, contract verdict directing instructions, obviously were not available to the plaintiff under the facts of his case.

MAI No. 26.06, correctly modified as to its second paragraph, should be given under those facts. The plaintiff's readiness and willingness to perform his agreement, if it is an issue on retrial, should be considered in drafting the instruction. *Braun v. Lorenz,* 585 S.W.2d 102 (Mo.App.1979); *Forsythe v. Starnes,* 554 S.W.2d 100 (Mo. App.1977).

We do not agree with the defendant that the instruction in question was modeled after either MAI 26.01 or 26.05, or any other instruction for that matter. The legal file copies of the instructions and the transcript do not reflect even a good college try at compliance with the demands of Rule 70.02(d) both as to marking and record making as to giving or refusing of the instructions.

▪▪ We cannot say, however, that the plaintiff's failure to more closely modify MAI No. 26.06 for his verdict director was reversible error. Instruction No. 6 fairly submitted the issues of whether or not there was a sales agreement between the parties, the plaintiff's version of its terms, the defendant's default and the resultant damages to the jury for its deliberations. The instruction in effect complied with the requirements of Rule 70.02(e). *State ex rel. Missouri State Highway Commission v. Hensel Phelps Construction Company,* 634 S.W.2d 168 (Mo banc 1982).

The trial court gave instruction No. 9, the plaintiff's damage instruction, which contained a provision for the assessment of prejudgment interest. For clarity, we set out that instruction here:

> If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained, in an amount not more than $25,000.00 as a direct result of the occurrence mentioned in the evidence.
>
> You shall further award to plaintiff interest on the amount of any damages at the rate of 6% per annum from December 15, 1976 until July 2, 1979 and 9% per annum from July 3, 1979 until today.

If that instruction is offered at a retrial of this cause, we suggest that the July 3, 1979 date in the second paragraph is in error. The pertinent statute, Section 408.-020, RSMo Supp.1980, was amended so as to increase the prejudgment interest rate to nine per cent with an effective date for the statute of September 28, 1979. The six per cent rate to be applied up to and including September 28 and the nine per cent rate to be applied on and beginning with September 29, 1979. *Senn v. Commerce-Manchester Bank,* 603 S.W.2d 551, 554 (Mo. banc 1980).[1] We do not say now that such an instruction submitting prejudgment interest as part of the damages should be submitted on the retrial. Such a decision

---

**1.** In accordance with that opinion we note that this court in *Twin River Construction Co., Inc. v. Public Water District No. 6,* 653 S.W.2d 682

(Mo.App.1983) [18, 19] incorrectly set July 3, 1979 as the date on which the 9% interest rate was to be first applied.

should reflect the evidence on that retrial and the positions of the parties.

On his cross-appeal, the plaintiff complains of the trial court's refusal to give on his behalf instruction No. 10 which directed the jury to assess the damages and the prejudgment interest at the thereinstated amounts if it should find in favor of the plaintiff on his claim. The plaintiff has asked that the judgment be reversed as to damages only and that the trial court be directed to enter a judgment for him in the amount of $34,172.59 plus interest from the time of the original judgment. Obviously, we cannot do so in the light of our position that instruction No. 8 was prejudicially erroneous. In accordance with our comments above with respect to instruction No. 9, we also should point out that the interest calculation in instruction No. 10 is incorrect. We note that the verdict of the jury differed as to both the interest and the damage amounts from those amounts set out in instruction No. 10. Instruction No. 10 is not warranted by the evidence at the trial. The evidence is not as clear, free of confusion and uncontradicted as suggested by the plaintiff. There is neither substantial nor precise evidence as to the exact dollar loss that the plaintiff sustained as a result of the defendant's breaking the trade. There is no evidence as to the mechanics or process by which the plaintiff would incur a loss. There is insufficient and imprecise evidence as to the value of the debentures if they had actually been delivered to the plaintiff on the date of the alleged contract or how he would have realized that value in terms of establishing his profit over his purchase price. There was a jury question as to the actual value in the open market on the resale of the securities on the same day as purchased. On the retrial, the evidence may or may not properly call for the use of an instruction similar to instruction No. 10 offered in this trial. We must leave that decision to that trial judge.

The defendant has raised several other issues in his appeal of the plaintiff's judgment. We will not address all of those remaining issues and contentions as it is not necessary to do so to properly dispose of the appeal or the cross-appeal. An appellate court should limit its opinions to those questions essential to a proper disposition on appeal. *State v. State Tax Commission of Missouri*, 651 S.W.2d 130 (Mo. banc 1983). All of the defendant's and plaintiff's remaining points on this appeal and cross-appeal are also rendered moot by our decision that instruction No. 8 was erroneous and prejudicial.

Additionally, the defendant urges on appeal that even if the evidence showed a breached enforceable sales agreement, the plaintiff would be unable to show any legal damages as he sustained no out-of-the-pocket loss. The defendant ignores the plaintiff's position that he lost the benefit of his bargain.

An examination of the evidence would demonstrate that a jury could believe the parties agreed to a sale of the debentures and further it could have believed that the plaintiff suffered substantial loss when he did not receive the benefit of the bargain he made. He expected to receive 250 debentures at a sales price of $790.00 per debenture in the face of a market price of somewhere near $890.00. How, when, to whom and for what price he could have resold those debentures is not as obvious from the evidence as the plaintiff urges. The position of the defendant, however, that the plaintiff could not have sustained a pecuniary loss if indeed defendant breached an enforceable contract (regardless of the evidence that might appear at the retrial) is one that will be difficult to establish.

On a retrial of this case the parties should not take this opinion as requiring any particular instructions or limiting the scope of instructions which the evidence and the issues on such retrial may require.

In accordance with our ruling that the trial court committed prejudicial error in giving instruction No. 8, judgment for the plaintiff is hereby reversed and the cause is remanded for a new trial. The cross-ap-

peal is dismissed as the issues therein are rendered moot under this opinion.

GEORGE M. FLANIGAN, Special Judge, and SMITH, J., concur.