**R & R LAND DEVELOPMENT, L.L.C., Plaintiff–Appellant,**

v.

**AMERICAN FREIGHTWAYS, INC., a/k/a and f/k/a American Freightway Corporation, Defendant–Respondent.**

No. SD 31820.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 19, 2012.

Motion for Rehearing and Transfer Denied Jan. 7, 2013.

Application for Transfer Denied by Supreme Court March 19, 2013.

Steven E. Marsh, Hulston, Jones & Marsh, L.L.C., Springfield, MO, for Appellant.

Kregg Keltner, Haden, Cowherd, Bullock & McGinnis, Springfield, MO, for Respondent.

GARY W. LYNCH, P.J.

R & R Land Development, L.L.C. ("R & R"), appeals the trial court's judgment in

favor of American Freightways, Inc. ("American"), with respect to R & R's claims for fraud, breach of contract, specific performance, and rescission, all arising from a real estate transaction. In two points on appeal, R & R argues that (1) the trial court misapplied the law in denying rescission because R & R was entitled to rescission based on the trial court's finding that both parties believed American had fee simple title to the real estate, and (2) the trial court's finding that there was no mutual or unilateral mistake is against the weight of the evidence because all the evidence showed that both parties believed American had fee simple title to the real estate. R & R's arguments fail because they rest on a fundamental misunderstanding of the trial court's findings and conclusions. The trial court found that in spite of the parties' beliefs about American's title to the property, there was no mutual mistake about the nature of the transaction between the parties. Finding no merit in R & R's points, we affirm the trial court's judgment.

### Factual and Procedural Background

On November 20, 2000, R & R entered into a written contract with American to purchase a 40–foot by 725–foot strip of land ("the property"). The contract required R & R to pay $29,000 in exchange for conveyance of the property by warranty deed. The original contract did not close on the date specified, and an addendum was executed with a closing date on or before February 28, 2001. The addendum also called for the payment of $1,000 earnest money by R & R. The earnest money deposit was never paid, and the February 28, 2001, closing did not occur. There were no further addenda to the contract, and none of the other obligations of the contract were met by either party.

From February 28, 2001, to April 2, 2001, there were communications between R & R and American, which was still contemplating conveying the property to R & R. There were also discussions about the possibility of R & R acquiring an easement over the property in lieu of an actual deed.

On April 2, 2001, Ron Hinds, a principal of R & R, called Randy Smith at American and indicated, in an impatient and perhaps aggressive manner, that he intended for American to convey its interest in the property to R & R that day. After consulting with his superiors, Smith called Hinds and told him that if R & R wanted to purchase American's interest that day, as Hines insisted, then in exchange for $29,000, American would convey it only by quitclaim deed. Upon receiving this information, Hinds traveled to American's offices in Harrison, Arkansas, and exchanged a $29,000 cashier's check for a quitclaim deed conveying all of American's interest in the property to R & R. On April 9, 2001, R & R obtained a title report showing that there was a 1953 quitclaim deed to the city of Springfield which affected title in the property.

R & R subsequently filed suit alleging fraud and breach of contract and seeking damages and specific performance or rescission and restitution. American answered, responding that R & R breached the original contract. Following a bench trial, the trial court issued its judgment with findings of fact and conclusions of law. The trial court found that "[a]t all times during the negotiations between R & R and American, and including from the date of the initial contract through April 2, 2001, American believed in good faith that it held fee simple title to the subject property[,]" but that "[n]o competent evidence was offered suggesting that as of April 2, 2001, a mistake, whether mutual or unilat-

eral, accident or fraud was committed by American in its tender of a Quit Claim Deed for the subject property in exchange for the agreed payment." The trial court also concluded that the original contract had been materially breached when R & R failed to pay the earnest money and that, as a result of that breach, American was relieved of the responsibilities outlined in the original contract. The trial court went on to conclude that the entire agreement of the parties was contained within the April 2, 2001, quitclaim deed. The trial court entered judgment in favor of American on all the claims raised in the petition. This appeal followed.

### Standard of Review

In a court-tried civil case, "[t]he judgment of the trial court will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). Reviewing courts treat questions of fact and questions of law differently. *Id.* "In reviewing questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Id.* at 44. "Once contested, 'a trial court is free to disbelieve any, all, or none of th[e] evidence,' and 'the appellate court's role is not to re-evaluate testimony through its own perspective.'" *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 308–09 (Mo. banc 2010)). "The trial court receives deference on factual issues 'because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *Id.* On the other hand, "[t]his Court applies *de novo* review to questions of law decided in court-tried cases." *Pearson*, 367 S.W.3d at 43 (quoting *StopAqui-*

la.org v. City of Peculiar, 208 S.W.3d 895, 899 (Mo. banc 2006)).

### Discussion and Decision

For ease of analysis, we address R & R's points on appeal in reverse order.

### The trial court's finding that neither of the parties was mistaken about the nature of the April 2 transaction is not against the weight of the evidence.

Our first task in addressing R & R's second point is determining the nature of the challenge. R & R's second point is not a model of clarity. It states as follows:

> The trial court erred in entering judgment in favor of [American] denying rescission of the transaction that occurred on April 2, 2001, and restitution to [R & R], because the trial court's judgment is against the weight of the evidence in failing to find either a mutual mistake, or a unilateral mistake by [R & R] with knowledge of such mistake by [American], in that the trial court specifically found, and all the evidence on the issue showed, that [American] believed that it held fee simple title to the subject property, and agreed and intended to "convey" that "property" to [R & R], and the undisputed documentary evidence showed that [American] represented to [R & R] that [American] held such title but in fact [American] did not have any title to the property, and that [R & R] paid [American] $29,000.00 for the property based upon such belief but received nothing of value in exchange.

The problem with this point is that it fails to explicitly state about which fact the trial court failed to find the parties were mistaken. The point could be read as challenging either (1) the trial court's failure to find a mistake of fact *with respect to the*

*parties' beliefs about American's title in the property* or (2) the trial court's failure to find a mistake of fact *with respect to the nature of the April 2 transaction.*

■ Based on the trial court's express factual findings, we conclude that the point challenges the trial court's failure to find a mistake of fact with respect to the nature of the April 2 transaction. This is because a challenge to the trial court's failure to find a mistake of fact with respect to the parties' beliefs about American's title in the property would be logically impossible. The trial court expressly found that American believed in good faith that it had fee simple title to the property. That is the exact proposition the facts listed in the point tend to support. Thus, if the point challenged the failure to find a mistake of fact with respect to American's belief about its title in the property, the point would be challenging exactly what the trial court found. A party cannot appeal a finding of the trial court with which it agrees because as to that finding the party is not aggrieved. *See* section 512.020, RSMo Cum.Supp.2010; *Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon,* 231 S.W.3d 158, 168 (Mo. App.2007). Consequently, we construe R & R's point as claiming that the trial court erred in denying R & R's claim for rescission because the trial court's finding that there was no mistake of fact with respect to the nature of the April 2 transaction is against the weight of the evidence in that American believed it had fee simple title to the property and therefore must have intended to transfer fee simple title via the quitclaim deed executed during the April 2 transaction.

■ R & R's claim has no merit. A claim that a judgment is against the weight of the evidence presupposes the existence of substantial evidence to support the judgment and instead challenges the effect of that evidence to induce belief. *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.2010). The term weight of the evidence means "weight in probative value, not the quantity or the amount of evidence." *Id.* Reversal based on a claim that the judgment is against the weight of the evidence is appropriate "only when the court has a firm belief that the judgment is wrong." *Pearson,* 367 S.W.3d at 43.

■ In analyzing a claim that the trial court's decision is against the weight of the evidence, we must also consider "the burden of proof governing the trial court's determination." *Id.* To justify rescission based on mutual mistake, the mutual mistake "must be established by clear, cogent and convincing evidence." *Heinze v. Hobson,* 622 S.W.2d 17, 18 (Mo.App.1981). *See also Croy v. Zalma Reorganized Sch. Dist. R–V of Bollinger Cnty.,* 434 S.W.2d 517, 520 (Mo.1968); *Alea London Ltd. v. Bono-Soltysiak,* 186 S.W.3d 403, 415 (Mo.App. 2006). The burden to produce such evidence is on the party seeking rescission. *Thies v. St. Louis Cnty.,* 402 S.W.2d 376, 381 (Mo.1966). Therefore, R & R had the burden of proving its claim for rescission.

Relief based on a claim that the trial court's judgment against the party having the burden of proof is against the weight of the evidence is rarely granted. *See Pearson,* 367 S.W.3d at 52 ("This Court rarely has reversed a trial judgment as against the weight of the evidence."). For even in the context of a claim that the judgment is against the weight of the evidence, we defer to the trial court's credibility determinations and decisions regarding the weight of the evidence. *Houston,* 317 S.W.3d at 186. Thus, relief will be granted on a claim that the judgment was against the weight of the evidence where such claim is asserted by a party having the burden of proof only where the evidence presented below was conclusive. *Cf.*

*Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App. 1999) (noting that it is "well established that where a party has the burden of proof on an issue and where the evidence presented thereon is not conclusive, a judgment in favor of the opposing party requires no evidentiary support because the trier of fact may disbelieve the proponent's uncontradicted or uncontroverted evidence.").

■■■ Our resolution of this point also requires us to consider the types of factual mistakes which will justify rescission of a contract. A mistake may be either mutual or unilateral. *See, e.g., Alea London,* 186 S.W.3d at 415–16. "A mutual mistake to warrant cancellation or rescission of a deed must relate to the existence or nonexistence of a fact, past or present, material to the transaction, and not as to a future contingency." *Thies,* 402 S.W.2d at 378. "[A] mutual mistake is one common to both or all parties where each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 879 (Mo.App.1984). "It must appear that both parties did what neither intended to do." *Link v. Dowdy,* 816 S.W.2d 927, 929 (Mo.App.1991).

■■■ A unilateral mistake, on the other hand, exists "when only one party has an erroneous belief as to the facts." *Landers v. Sgouros,* 224 S.W.3d 651, 664 (Mo. App.2007). Such a mistake is not usually an adequate basis for relief. *See Alea London,* 186 S.W.3d at 415–16. There must also be evidence that the other party knew or had reason to know of the mistake. *See Sheinbein,* 670 S.W.2d at 876. Additionally, "[t]he mistake must be on a vital matter so that the court could believe the parties never actually agreed to the contractual elements." *Id.*

Based on these principles, the precise question we must address is whether the trial court's finding that neither of the parties was mistaken about the nature of the April 2 transaction was against the weight of the evidence where American's representative testified that American insisted the transfer be completed using a quitclaim deed. We conclude the trial court's finding on that point was not against the weight of the testimony and documentary evidence presented at trial.

Smith testified that on April 2, Hinds was impatient to have the property conveyed by American that day and that the only way American would comply with that request is through the use of a quitclaim deed. Smith further stated that Hinds agreed to that type of transaction. Hinds confirmed that on April 2, all he was concerned about was getting a document showing American was selling the property to R & R. R & R also introduced into evidence the quitclaim deed. This combination of testimony and documentation has sufficient probative value to support the conclusion that the April 2 transaction contemplated a conveyance by quitclaim deed with all of the risks such a transaction entailed.

R & R's arguments to the contrary simply ignore our standard of review. Premised upon the testimony that American thought that it held fee simple title to the property, R & R argues that the trial court not only should have inferred, but was required to infer, that American intended to convey fee simple title during the April 2 transaction. This inference is contrary to American's direct testimonial evidence of its insistence that it would only convey the property that day by quitclaim deed and the reasonable inferences drawn from such insistence that American was refusing to warrant its title to the property in any respect to R & R on that day and that R &

R was willing to accept the quitclaim deed without any such warranties. R & R also suggests that it is unreasonable to assume that all of the details of the transaction were discussed in the telephone calls on April 2 and therefore that the terms of the previous contract must have been included in the terms of the April 2 transaction. Those inferences, however, are contrary to the judgment and must be disregarded. *See Houston,* 317 S.W.3d at 186. They also ignore the evidence favorable to the judgment that R & R materially breached the previous agreement by failing to pay the earnest money and by failing to close the transaction by the date specified in the previous agreement. Because the quality of the contrary evidence relied upon by R & R, the credibility and weight of which the trial court was free to asses, does not impinge upon or diminish in any respect the probative value of the favorable evidence and inferences inducing belief that neither party was mistaken about the nature of the April 2 transaction, the trial court's failure to find a mutual or unilateral mistake of fact with respect to the nature of the April 2 transaction was not against the weight of the evidence. See *id.* at 186–87.

R & R also suggests that the quitclaim deed did not give it reason to know American doubted it had fee simple title to the property because both parties intended that the transaction would convey the property. This argument also ignores the standard of review because it fails to account for facts favorable to the judgment. The facts show that the method of conveyance was a material term of the transaction. American would not proceed with the transaction on April 2 unless the property was to be conveyed by use of a quitclaim deed. That is, American was unwilling to proceed if it had to take the risk of warranting title. The fact that American imposed that condition on the transaction gave R & R reason to question the nature of American's interest in the property. When confronted with this condition and the title questions it raised, R & R was willing to, nevertheless, accept any document showing a conveyance, even if it did not warrant title.

In that respect, the facts in this case are similar to the facts in *Croy*, 434 S.W.2d 517. In that case, a school district owned one acre of land and had apparently mistakenly built a school building just north of the property it actually owned. *Id.* at 519. Eventually, the school district discontinued using the school building, and the school board decided to sell the land. *Id.* After an initial advertisement, the members of the school board were informed that the school building was not situated on the one-acre tract. *Id.* Some years went by, and the school board again advertised the sale of the one-acre tract, this time specifying that the property would be conveyed by quitclaim deed and leaving out any mention of the school building. *Id.* Croy bought the land, accepted the quitclaim deed, and then sued the school district seeking reformation of the deed so that it included the land on which the school building was situated. *Id.* at 519–20. On appeal, Croy argued that the deed should be reformed on the basis of mutual mistake of fact. *Id.* at 520. He claimed the school district had acquired the land on which the school building sat by adverse possession and that the school district intended to convey the school building as part of the sale, but by mutual mistake the description was not amended to include the land acquired by adverse possession. *Id.* Our supreme court held there was no mutual mistake of fact because the school board was uncertain as to whether the district owned the land and made no representations because of that uncertainty. *Id.* The court reasoned that Croy had the opportunity to discover the mistake before the transaction by having a survey done and, by not conducting that investigation,

he took a risk the consequences of which he was bound to accept. *Id.* at 521–22.

■ Here, similarly, R & R had the opportunity to verify the status of title to the property by consulting public records, but chose not to do so. R & R discovered the mistake regarding American's fee simple ownership of the land on April 9, just seven days after the transaction at issue. Had R & R investigated the situation during the months leading up to the April 2 transaction, R & R could have avoided this problem. American recognized the risky nature of going ahead without such an investigation, and demanded that, if the conveyance was to be made that day, the conveyance must be made by quitclaim deed. Like the plaintiff in *Croy,* R & R was not mistaken about the nature of the transaction. Rather, R & R took the chance that the transaction would convey fee simple title without investigating the facts to assure that would be the case. "Equity will not relieve against mistake when the complaining party had within his reach the means of ascertaining the true state of facts and, without being induced by the other party, neglected to avail himself of his opportunities of information." *Id.* at 522. There was no mistake of material fact that would justify rescission.

■ R & R invites us to indulge in speculation and draw an inference adverse to the judgment that, even though it was a sophisticated development company, it was unaware of the essential characteristics of a quitclaim deed. " '[A] quitclaim deed does not import that the grantor has any interest at all.' " *Webster Oil Co., Inc. v. McLean Hotels, Inc.,* 878 S.W.2d 892, 894 (Mo.App.1994) (quoting *Village of Climax Springs v. Camp,* 681 S.W.2d 529, 533 (Mo.App.1984)). Therefore, an essential characteristic of a quitclaim deed is that it contains no warranties or covenants by the grantor. Stinson, Mag & Fizzell, 1 MISSOURI PRACTICE, METHODS OF PRACTICE–TRANSACTION GUIDE, § 6.5 (4th ed.2001). One of the primary uses of a quitclaim deed is "for transfers where the grantor does not wish to be exposed to liability[.]" *Id.* For this reason, a grantee under a quitclaim deed is presumed to be a purchaser with knowledge. *Id.* Where a conveyance is made by quitclaim deed, "[t]he fact that a grantor refuses to make a full and complete assurance of title is enough to arouse suspicion and put the grantee on notice." *Pankins v. Jackson,* 891 S.W.2d 845, 847 (Mo.App. 1995). *See also McAboy v. Packer,* 353 Mo. 1219, 187 S.W.2d 207, 209–10 (1945).

■ Even if we were to accept that R & R was mistaken about the terms of the agreement, in the context of claims for rescission based on unilateral mistake, "Missouri courts have afforded little sympathy to a party who 'did not understand the consequences of an act.' " *Parks v. MBNA America Bank,* 204 S.W.3d 305, 314 (Mo.App.2006). "Where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief should not be granted absent unusual circumstances which would make enforcement of the agreement unjust." *Id.* Here, the loss R & R suffered was entirely the result of its own inattention, and American was in no way at fault as American explicitly refused to warrant title.

The trial court's determination that there was no mutual or unilateral mistake of material fact with respect to the terms of the April 2 transaction is not against the weight of the evidence. Point II is denied.

***The trial court did not misapply the law in denying rescission after it found no mutual or unilateral mistake in the nature of the April 2 transaction.***

In its first point, R & R claims the trial court erred in denying rescission because

the trial court misapplied the law in denying rescission because it found that both American and R & R believed American held fee simple title to the land but then did not award any relief to R & R. The crux of this argument is R & R's assertion that "[t]he finding that American believed in good faith that it held fee simple title shows that rescission was proper under Missouri law." The assumption underlying these assertions is that if the trial court found *any* mutual mistake, it was legally obligated to rescind the quitclaim deed. That is not the law.

As discussed above, "a mutual mistake is one common to both or all parties where each labors under the same misconception respecting a *material* fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Sheinbein,* 670 S.W.2d at 879 (emphasis added). "The mistake must be on a vital matter so that the court could believe the parties never actually agreed to the contractual elements." *Id.* That is, to order rescission, the trial court had to find a mutual mistake *and* that the mutual mistake was material to the contract.

■■■ The trial court found that both parties were mistaken in their belief that American held fee simple title to the property and yet entered judgment for American based on the fact that the parties were not mistaken about the nature of the April 2 transaction. The necessary implication from that conclusion is that the trial court determined that the mistaken beliefs about American's interest were not material to the agreement reached in the phone calls on April 2 and consummated by the exchange of the certified check and the quit claim deed that day. In other words, the parties' beliefs as to the status of title on April 2 were immaterial to the nature of the transaction on that date, about which

the parties were not mistaken, *see* discussion under preceding point *supra,* because that transaction was not dependent upon the status of title, but rather was designed to convey whatever interest, if any, that American had in the property that day. In the absence of a mistake of a material fact, it was not a misapplication of the law for the trial court to deny relief.

■■■ One additional argument requires our attention. Under this point, R & R also suggests that the trial court misapplied the law because the facts the trial court found justify relief under the theory of unjust enrichment. R & R is incorrect. "To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo.App.2010). However, "[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Id.* Here, there was an express contract—negotiated during the April 2 telephone calls—which governed this transaction. Thus, the doctrine of unjust enrichment does not apply. Furthermore, despite R & R's continual assertion that it received nothing for the $29,000 it paid to American, R & R's need for documentation "that day" suggests that it might have been reasonable for R & R to pay a premium for that documentation above the actual value, in hindsight, of the transaction. This is a risk that the parties were entitled to allocate by their contract, and we will not interfere with their allocation of that risk. *See Byrd v. Liesman,* 825 S.W.2d 38, 41 (Mo.App.1992) ("[T]he general rule of

freedom of contract includes the freedom to make a bad bargain.").

The trial court did not misapply the law when it denied rescission on the basis of the mistake proven at trial because that mistake—that both parties believed American had fee simple title to the property—was not material to the nature of the April 2 transaction. Point I is denied.

### Decision

The trial court's judgment is affirmed.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ. concur.