**Eliza CARREL, Plaintiff-Appellant,**

**v.**

**Dennis WILKERSON, by Mildren Wilkerson, guardian ad litem, Defendant-Respondent.**

**No. KCD 26194.**

Missouri Court of Appeals, Kansas City District.

March 4, 1974.

Robert B. Paden, Maysville, Downs & Pierce, by James O. Turner, St. Joseph, for plaintiff-appellant.

Price Shoemaker and Robert D. Colley, St. Joseph, for defendant-respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiff Eliza Carrel appeals from adverse judgments on her claims for injury to her person and for the wrongful death of her husband, Leonard Carrel, alleged to have resulted when the defendant Dennis Wilkerson negligently operated his motor vehicle into the automobile driven by the decedent and occupied by plaintiff. The plaintiff submitted her causes of action on

the theory of defendant's humanitarian negligence. After brief deliberation, the jury found the issues for the defendant.

Our decision does not require that we recount the evidence in detail; the salient features will suffice. The collision between the vehicles occurred on a clear afternoon at the intersection of U.S. Highway 169 and Cemetery Road at the edge of Union Star, Missouri. The defendant Wilkerson was westbound on U.S. 169 [which approaches the intersection from the east along a viaduct some 332 feet in length] and the decedent and plaintiff were southbound on Cemetery Road. A model of the viaduct, in simulacrum and to scale, prepared by an expert, established that at a point ninety-five feet east of the west end of the railing, the viaduct rises to an apex seventh-tenths of a foot higher than the elevation at the imaginary crossing of the center lines of Cemetery Road and U.S. 169. The stop sign which governs southbound traffic on Cemetery Road is somewhat more than twenty feet from the north edge of the pavement of U.S. 169. From that point, a motorist southbound on Cemetery Road has no view of vehicles on the viaduct approaching the intersection from the east.

It was the testimony of defendant Wilkerson that he was westbound on the viaduct at about 30 to 35 miles per hour when he first saw plaintiff's car 80 feet away. The front of the Carrel car was then one foot or two on the pavement of U.S. 169. Wilkerson immediately applied his brakes and the right front of his car continued in a westerly direction after the impact and did not cross the center line of the highway either before or after the collision. This testimony was generally corroborated by defendant's passenger except that the witness could not confidently say whether the Carrel car was stopped or moving at impact. Also, the witness, who lived in the vicinity, testified that from the stop sign on Cemetery Road there is no view of traffic coming west on the viaduct. A car

southbound on Cemetery Road must virtually enter onto the pavement of U.S. 169 in order to see around the bridge abutment for a view of westbound traffic.

The highway patrolman who investigated the accident found 78 feet of skidmarks on the westbound lane of the viaduct leading to a concentration of debris and an additional 39 feet of skidmarks to the west from that point. All the skidmarks were confined to the westbound lane of U.S. 169 and all the debris was found in the east half of Cemetery Road. The highway patrolman had interviewed the driver Carrel, later deceased, who related to him: "I drove up there and stopped and then inched my way up to see if everything was clear and that was it. When I could see him, we were hit."

The plaintiff Eliza Carrel testified that her husband brought the car, which was southbound on Cemetery Road, to a stop at the sign, could see nothing to the east, pulled about a foot onto the highway, saw a car coming over the apex of the viaduct, and stopped. The other car neither swerved nor slowed but continued coming and struck the Carrel car. The impact severely injured the plaintiff and killed her husband.

On this evidence, plaintiff submitted her causes of action on the theory of defendant's humanitarian negligence in failing to slacken speed and swerve after plaintiff came into a position of immediate danger of injury. Instruction No. 3 [a replica of MAI 17.14], by which the court submitted the humanitarian theory of recovery, directed a verdict for plaintiff—*whether or not the decedent was negligent*—upon the finding of the propositions submitted.

In the course of final summation, counsel for defendant argued:

MR. COLLEY: These cases are always interesting to me. You people when you come into the jury box you don't leave your common sense at home.

You bring it with you. Let's say Mr. and Mrs. Carrel are coming over this bridge—

MR. TURNER: That's pure speculation, none of the evidence in the case. Asking the jury to speculate on a very speculative situation. No evidence in this case.

THE COURT: Sustained.

Counsel for defendant resumed:

MR. COLLEY: Ladies and gentlemen, you can't tell me if the positions were reversed that Mr. and Mrs. Carrel wouldn't be here now—

(Counsel for plaintiff attempted an objection, but counsel for defendant persevered:)

—telling you that Dennis ran this stop sign. Now it's a two way street. You've got to find under all the evidence that Mr. and Mrs. Carrel in his car did violate that stop sign, run it, if you will—

MR. TURNER: Object to this. Does not follow instructions of the Court whatsoever.

THE COURT: Well, as I instructed in instruction number one, that the testimony—What we are having now of the attorney is not any evidence in this case, but if you will keep yourself to the facts, Mr. Colley, what you decide your case upon is what the evidence shows and not what the attorneys say the evidence shows. Go ahead.

The plaintiff contends that it was prejudicial error for the court to allow defendant, over objection, to argue that decedent violated the stop sign, an act of antecedent negligence which could not defeat the humanitarian recovery and which, in any event, was not imputable to plaintiff. We sustain her claim of error.

■ The permissible field of jury argument is broad, but the law does not con-template that counsel may go beyond the issues or record and urge prejudicial matters, or urge a theory of claim or defense which the law does not justify of which conflicts with the trial court's instructions submitting the issues of the case. Collins v. Cowger, 283 S.W.2d 554, 560 [7] (Mo. 1955); McCandless v. Manzella, 369 S.W. 2d 188, 191 [8] (Mo.1963). Under the instructions of the court, the single issue for the jury to determine was the humanitarian negligence of defendant. When a plaintiff has submitted his case solely on the hypothesis of the humanitarian doctrine, it is improper for a defendant, either by instruction or argument to inject the issue of the antecedent or contributory negligence of the plaintiff. Fisher v. Williams, 327 S.W.2d 256, 260 [3] (Mo.1959); Jones v. Gooch, 453 S.W.2d 653, 654 [1] (Mo. App.1970); Schrum v. Ciscell, 403 S.W.2d 657, 660 [7, 8] (Mo.App.1966). And, in fact, the court had informed the jury by Instruction No. 3 that plaintiff's right to recover was the same whether or not plaintiff's driver was negligent. Defendant's argument, therefore, which urged the jury to find "under all the evidence that Mr. and Mrs. Carrel in his car did violate that stop sign, run it, if you will", injected a false and distracting issue into the case: false because it violated the law of the case given by the court in Instruction No. 3; distracting because it diverted the jury from the legitimate inquiry of defendant's negligence to that of the plaintiff, an imputation of fault neither submitted nor otherwise sanctioned by law.

■ The error plaintiff now urges was sufficiently raised by her objection at the trial and in her motion for new trial that defendant's argument violated the instructions of the court. The response of the court, that the jury would decide the case upon "what the evidence shows and not what these attorneys say the evidence shows" in effect sanctioned the defendant's argument, and thus overruled the objection of plaintiff. Hancock v. Crouch, 267 S. W.2d 36, 44 [12] (Mo.App.1954); Faught

v. Washam, 329 S.W.2d 588, 602 [26] (Mo.1959). While a trial court, because of its coign of vantage of the proceedings and their effect on the jury, has a large discretion in permitting, restraining and purging final argument [Collins v. Cowger, *supra*, 1. c. 561 of 283 S.W.2d], there is no room for the exercise of judicial discretion on an issue of law. Jones v. Gooch, *supra*, 1. c. 655 [2] of 453 S.W.2d. In a humanitarian case, it is of no consequence how the plaintiff came into the position of immediate danger. Schrum v. Ciscell, *supra*, 1. c. 660 [6] of 403 S.W.2d. Neither the antecedent negligence of the decedent driver nor the contributory negligence of plaintiff, therefore, was a valid legal issue in this case. The judge, as a matter of law, should have sustained the objection of plaintiff and prohibited the argument of defendant which attempted to defeat the humanitarian cause of action on assertions in contradiction to the instructions of the court. Fowler v. Robinson, 465 S.W.2d 5, 11 [7–10] (Mo.App.1971); Jones v. Gooch, *supra*, 1. c. 655 [2] of 453 S.W.2d. The prejudice to plaintiff was heightened by the tacit approval given by the court to defendant's argument that the jury could draw the inference of fact that decedent ran the stop sign, when the only evidence in the case was that he had complied with the traffic signal. Faught v. Washam, *supra*, 1. c. 601 [23, 24] of 329 S.W.2d.

The defendant contends alternatively, however, that his argument considered as a whole was not an assertion of the contributory negligence of the decedent driver but rather that on the facts inherent in plaintiff's theory of the case, defendant had exculpated his humanitarian duty of care to avoid injury to plaintiff and that in any event, plaintiff had waived any right to object by her earlier acquiescence in a similar argument.

■ Under the humanitarian rule no duty to act is imposed upon the defendant until the plaintiff has come into a position of immediate danger. It is then that the doctrine begins to operate, and the antecedent negligence of neither the plaintiff nor defendant may be considered. Pankey v. Claywell, 417 S.W.2d 9, 11 [3–5] (Mo. App.). The question of when the plaintiff is in a position of immediate danger is generally one for the jury under all the evidence, but absent an oblivious plaintiff, the duty of a defendant operator to act does not commence until such plaintiff is actually in its path or so close to it that it is apparent he will not stop before reaching it. Reames v. St. Louis-San Francisco Railway Company, 359 S.W.2d 230, 236 [8, 9] (Mo.App.1962); Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 53 [6, 7] (1937). While there was evidence by an expert—based upon measurements of the automobile structures—that defendant's vertical sight distance should have disclosed the top of decedent's car at the stop sign when defendant was at a point 150 feet east of the intersection, there was no evidence that the two vehicles were ever in that juxtaposition. Nor was there evidence that defendant had a view of the movement and speed of plaintiff's car from the stop sign to its emergence on the highway. Thus it is evident that defendant could not have been chargeable with notice of plaintiff's peril, and defendant's humanitarian duty to act did not arise, until after plaintiff's car had moved beyond the vicinity of the stop sign. Thus, the stop sign was not a proof inherent in the plaintiff's theory of recovery and defendant's argument, amounting to a plea of antecedent negligence, was for that reason prejudicial.

■ The defendant contends alternatively, however, that even if this phase of his closing argument was improper, plaintiff waived her objection by acquiescing in the earlier phase when defendant argued to the jury:

We've got an accident that occurred at this intersection between a car who (sic) has pulled from a stop sign out of the traveled portion of the highway and a car who (sic) has every right to expect

that this car will obey the stop sign and not pull out until the way is clear for it.

The defendant relies on Fisher v. Williams, *supra*, for his contention that a litigant who fails to object to an improper argument cannot complain of error if that argument is repeated over his objection. *Fisher*, however, does not so hold. In that case plaintiff had made no objection to any portion of the closing argument, thus the court determined that he had not preserved the alleged error and was in no position to raise his objection for the first time on appeal. Moreover, the rule is recognized in this jurisdiction that the admission of improper testimony without objection does not render proper admission of subsequent testimony to the same effect over objection. Smith v. Sovereign Camp of Woodmen of the World, 179 Mo. 119, 77 S.W. 862, 865 [2] (1903). This principle was applied in State ex rel. Highway Commission v. Young, 324 Mo. 277, 23 S.W.2d 130, 134 [6] (1929): "The appellant's failure to object did not mislead the respondent or hurt his case. We think there was no waiver." This rule applies with equal validity to argument of counsel. Of course, the failure to object when the error first appears may remove the prejudice from the error when repeated.

We have concluded, in any event, that the two phases of closing argument were not to the same effect and thus defendant's assertion of waiver, even if otherwise available, is without basis. The first phase of the closing argument is not an imputation of antecedent fault to plaintiff or her driver for failing to stop at the sign. The argument is reasonably understood to assume that the decedent complied with the signal before moving upon the highway. The ensuing comment that defendant had every right to expect decedent would not pull onto the highway until the way was clear may have been of a fact inherent in plaintiff's theory of the case [depending upon the dimensions attributed by the jury to the zone of peril] and was not, in any

event, the source of the prejudice. The second phase of the argument, on the other hand, was an unalloyed invitation to the jury to find that plaintiff and decedent had violated the stop sign and [implicitly] for that reason plaintiff should be denied recovery.

The judgment is reversed and the cause remanded for new trial.

All concur.