Worden P. PENN, Plaintiff-Respondent,

v.

Tanya K. HARTMAN, a minor,
Defendant-Appellant.

No. 35266.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 3, 1975.

Motion for Rehearing or Transfer to Court
En Banc or Transfer to Supreme Court
Denied June 26, 1975.

Application to Transfer Denied
Sept. 8, 1975.

Kortenhof & Ely, Ben Ely, Jr., Frank E. Strzelec, St. Louis, for defendant-appellant.

Cox, Moffitt & Cox, Dallas W. Cox, Jr., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Plaintiff Worden P. Penn, a pedestrian, was struck by an automobile driven by defendant Tanya K. Hartman. After a jury verdict for defendant, the trial court granted a new trial to plaintiff on the ground that "The Court erred in permitting defendant . . . to argue contributory negligence when plaintiff's case was submitted under the humanitarian doctrine . . ." Defendant appeals from that order. Plaintiff contends that the order of the court granting a new trial can also be sustained on two other grounds raised in his motion for new trial. He alleges that the court erred when it permitted one of defendant's witnesses to testify after making an affirmation because the witness did not raise his hand, and because there was no evidence that the witness understood the nature of the affirmance or that he considered himself bound by its obligation. He also contends that the court erred in permitting a police officer to testify with respect to certain specific items contained in the police report which had been prepared by an officer who was deceased at the time of trial. We affirm the order of the trial court for the reasons hereafter set forth.

Defendant does not question the sufficiency of the evidence to warrant the humanitarian submission. Thus only the facts necessary to the determination of the issues presented will be set out.

The accident giving rise to this action occurred on St. Louis Avenue near its intersection with 68th Street in the City of Hillsdale in St. Louis County. St. Louis Avenue runs east and west; the curb lanes are devoted to parking and 2 lanes are used by moving traffic. 68th Street dead ends into St. Louis Avenue from the north. An alley dead ends into St. Louis Avenue from the south. The east curb line of the alley is a few feet west of the west curb line of 68th Street.

In mid afternoon on a clear dry day plaintiff who had walked northwardly in the alley to St. Louis Avenue was crossing that street when he was struck by an automobile being driven eastwardly in the east bound lane of traffic by the defendant.

The primary contested issue was the location at which plaintiff stepped into St. Louis Avenue. There were no cars parked at the south curb of St. Louis Avenue to the west of the alley. To the east of the alley there were a number of parked vehicles. The first vehicle parked at the south curb, east of the alley, was a 1966 Ford van. The van was about three or four feet east of the alley. There was another car parked directly east of the van. Evidence on behalf of the plaintiff was to the effect that he was going to get a pack of soda at the tavern on the northeast corner of the intersection; that he had walked up the alley to St. Louis Avenue, looked to the west and saw no vehicles approaching from that direction, looked to the east and proceeded northwardly into St. Louis Avenue. The evidence on behalf of defendant was that plaintiff stepped out into the path of de-

fendant's car from between the van and the car parked to the east of the van.

We first consider defendant's contention that the trial court erred in granting the new trial on the ground that defendant's argument injected the question of plaintiff's contributory negligence into a case submitted to the jury on the theory of humanitarian negligence.

The trial court granted a new trial. Thus our review differs from those cases in which appellant seeks a new trial in the appellate court after the trial court has considered, and in its discretion has denied the motion for a new trial. Here we must indulge every reasonable inference favorable to the trial court's ruling, and we may not reverse unless there has been a clear abuse of discretion. *Daniels v. Dillinger*, 445 S.W.2d 410 (Mo.App.1969); *Crocker v. McCartney*, 24 S.W.2d 649 (Mo.App.1930).

With these principles in mind we shall review pertinent portions of the argument. At about the midpoint of defendant's closing argument the following occurred:

"There is some other reference here that I believe that I want to touch on, as to the believability of the testimony that's been brought to you from the other side of the case. Mr. Penn, of course, now says that he was walking from the alley, that he stopped, that he looked, that he could see all the way up to the cemetery on the west end of St. Louis and saw nothing coming.

Mr. Cox: I object to the reference, to what Mr. Penn saw.

Mr. Ely: I have a right to review the evidence and I am talking about the creditability and believability of it.

The Court: The objection is overruled.

Mr. Ely: Now, Ladies and Gentlemen of the jury, you have seen our exhibits B and C that look to the west. Is it believa-

ble anybody that looked to the west wouldn't see a car coming?

Mr. Cox: I object to this argument. It is improper. The plaintiff's negligence is not an issue in this case. Instruction No. 2 says whether or not plaintiff is negligent.

Mr. Ely: I am talking about the believability of his testimony as to how this happened.

The Court: Overruled.

Mr. Ely: Now, I want to make it clear, I am not accusing anybody here of any falsehood. When you are in these accidents and time goes by your memory will make you try to remember the things most favorable to yourself and that's why we have juries to look back and see what the facts really are. Obviously, Tanya's car didn't drop out of the sky. It was there and travelled all the way from Lucas and Hunt to the point of the accident. If he had looked, he would have seen it. There is no curb here, no hill, nothing to block his view of her approaching car and when he says that he didn't see her I think that simply means that he didn't look because there was nothing else to prevent him—

Mr. Cox: I object, your Honor, to the argument of counsel and at this time I move for mistrial.

The Court: The objection and motion are overruled.

Mr. Ely: As I said, there is nothing there that would possibly or could possibly prevent him from seeing her car had he looked."

Subsequently an objection was sustained and the jury was ordered to disregard the following portion of the argument:

"It is ironic here, the instruction number that I am sure you will hear from Mr. Cox later, the Judge read to you Instruction No. 2,[1] and it says, your verdict must be for the plaintiff Worden Penn whether

1. Instruction 2 was the humanitarian submission based on MAI 17.14 & 17.15 modified.

or not plaintiff Worden Penn was negligent if you believe, and it lists some things there. It is ironic for me to say, but I want to put the blame on someone else." Plaintiff's request for a mistrial was overruled. The last paragraph of defendant's argument reads as follows:

"Now, I have just a few other things to say to you and that is, I ask you to return a verdict for the defendant. You will be given two verdict forms that the Judge and the bailiff will give you. One says we find in favor of the plaintiff and assess his damages at blank dollars and the other says, we find in favor of the defendant. I ask you to return the verdict in favor of the defendant Tanya because whe was not the cause of this accident. *The accident happened because without looking Mr. Penn stepped out from those cars.* On her behalf, Tanya's behalf, I thank you for the attention you gave to our case in this matter. Thank you very much."

■ Before we analyze the argument we take note of the defendant's contention that no objection was made to the latter portion of the argument. Plaintiff did make known to the court that he was objecting to any reference to contributory negligence on the part of plaintiff. The assignment in the motion for new trial was sufficiently broad to cover the entire scope of the argument. The trial court has the authority to correct errors which are brought to its attention in a motion for new trial even though no previous objection has been made. *Johnson v. Kansas City Public Service Co.,* 360 Mo. 429, 228 S.W.2d 796 (1950).

■ While great latitude is permitted in argument, counsel may not go beyond the issues and urge a theory of claim or defense which is not within the scope of the court's instructions. *Carrel v. Wilkerson,* 507 S.W.2d 82, 85 (Mo.App.1974); *Jones v. Gooch,* 453 S.W.2d 653 (Mo.App.1970).

Plaintiff submitted his case solely on the theory of humanitarian negligence. "It has been said that one thing lawyers confident-

ly know is that in a humanitarian case it is improper to argue that a plaintiff was negligent. *Fisher v. Williams,* 327 S.W.2d 256[3] (Mo.1959)"; *Schrum v. Ciscell,* 403 S.W.2d 657 (Mo.App.1966). In determining whether the trial court abused its discretion in holding that defendant improperly argued that plaintiff was negligent we view the argument as a whole.

Early in his closing defendant argued that plaintiff could see a considerable distance to the west (his left); that plaintiff testified he looked and saw nothing; that defendant's car did not drop from the sky but travelled all the way from Lucas Hunt Road to the point of the accident. There were no obstructions to vision and if defendant looked he would have seen it, thus when plaintiff "says he didn't see her it means that he did not look."

■ It has been long and often held that the failure of a pedestrian to see what is plainly visible or not to look when entering the travelled roadway is negligence. *Woods v. Moore,* 48 S.W.2d 202 (Mo.App. 1932); *Lee v. Zumbehl,* 410 S.W.2d 79 (Mo. banc 1967). The very essence of this argument is that plaintiff was negligent. Having laid the groundwork defendant subsequently discussed that part of the humanitarian doctrine which tells the jury that upon a finding of humanitarian negligence they will find for plaintiff whether or not plaintiff was negligent. Defendant then, in effect, argues that rather than blame defendant ". . . I want to blame someone else." There is no one else to blame but plaintiff. The court did sustain the plaintiff's objection at this point but did not declare a mistrial.

All of the above argument was tied together in defendant's parting remark:

"The accident happened because without looking Mr. Penn stepped out from those parked cars."

From an over view of the argument it is apparent that the thrust of defendant's argument was that the accident occurred because of the negligence of plaintiff.

Defendant urges that he was arguing credibility not negligence. We feel this can be viewed in much the same light as Anthony's assurance that he came to "bury Caesar not to praise him".[2] Whether Plaintiff looked and negligently failed to see or whether he negligently failed to look was not relevant to the issues to be determined by the jury. We hold that the trial court is vested with the same discretionary power to exclude argument on collateral matters which bring controversial matters into the case which cause prejudice wholly disproportionate to the value and usefulness of the proffered argument, as it does to evidence of such nature. *Daniels v. Dillinger, supra.* The trial court did not abuse its discretion in determining that the overriding effect of this argument was to urge a defense which was not within the scope of the court's instructions and was prejudicial. *Carrel v. Wilkerson, supra.*

Defendant urges that *Eddings v. Keller*, 400 S.W.2d 164 (Mo.1966) is controlling here. In Eddings there had been a collision between two cars and a tractor trailer on a bridge over the highway at 1:00 a. m. A short time later plaintiff's decedent, Eddings, who was going south, collided with the tractor trailer which was blocking part of the highway. Some time later defendant, driving a tractor trailer south toward the bridge collided with Eddings. The cause was submitted on defendant's humanitarian negligence in failing to stop after he saw or could have seen Eddings in a position of imminent peril. Defendant argued the question of visibility of both plaintiff and defendant saying there was one thing about the case, though his client did not see Eddings, "Eddings didn't see it [the truck] either." The court there emphasized the fact that the question of what defendant saw or could have seen was the principle issue in the case. The trial court there in its discretion determined that the argument had great relevancy to the issues upon which the case was submitted. The trial court in denying the request for a new trial,

of necessity, determined that the argument was not prejudicial. The Supreme Court in affirming the action of the trial court ruled that "the trial court did not abuse its discretion in making its determination that the argument was within proper limits . ."

In this case the court did not abuse its discretion in ruling that the argument injected a defense into the case which was not within the scope of the court's instructions and was prejudicial.

In view of the fact that this case must be retried we shall discuss briefly the other matters which were raised by plaintiff to sustain the order of the trial court.

In the trial below the defendant called Reverend Ulysses Simmons as a witness. As Reverend Simmons approached the court room clerk he said "I do not swear". He took the prescribed form of affirmation. Plaintiff's counsel testified that he was not aware that the witness had affirmed.

V.A.M.S. 492.030 reads, in part, as follows:

"Every person who shall *declare that he has conscientious scruples against taking an oath or swearing in any form* shall be permitted to make his solemn declaration or affirmation . . ."

The clear language of the statute requires that the witness have conscientious scruples against taking the oath and that he make this fact known to the court before he be permitted to affirm.

In the retrial plaintiff will be aware of the fact that the witness does not desire to swear and if there is any question as to whether the witness should be permitted to make a solemn affirmation the trial court will be in position to make a proper determination before the testimony of the witness is taken.

Plaintiff next raises the question of the admissibility of the testimony of Officer Dan E. Menke of the Police Department of

2. William Shakespeare, *Julius Caesar,* Act III, scene ii.

Hillsdale, Mo. Officer Menke produced the police accident report which was marked defendant's Exhibit "G". The exhibit was not formally introduced into evidence. Officer Griffin who was assigned to investigate the accident and who signed the report was deceased at the time of trial. That portion of the report containing a diagram purporting to show the scene and the positions of objects and persons at the scene was put into evidence by defendant through the oral testimony of Officer Menke. *Bolhofner v. Jones*, 482 S.W.2d 80, 84 (Mo.App. 1972). The diagram was not shown to the jury.

While "the Uniform Business Records Act[3] eliminates the hearsay objection when such a record is properly qualified thereunder, . . . it does not make admissible any evidence which would be incompetent if offered in person." *Ryan v. Campbell "66" Express*, 304 S.W.2d 825 (Mo. banc 1957). The testimony of Officer Menke could therefore encompass no more than that of the deceased officer had he been present and testified. A police officer who is not an eyewitness may not give his opinion or his conclusion based upon the results of his investigation as to the point of impact. *Chester v. Shockley*, 304 S.W.2d 831 (Mo.1957).

Officer Menke testified that it was a rule of his department that a diagram be made of the scene, as it exists at the time of the officer's arrival. We have examined the diagram from which the officer testified. It is not completely accurate in that there is no indication of the alley which comes into St. Louis Avenue from the south. There are two parked cars indicated as being at the south curb one to the west of the extended west line of 68th Street, which might create some confusion as to its location with respect to the alley. The second car is shown as parked immediately east of the first car. There is a pathway indicated by arrows from the south curb, between the two parked cars to a circle with an "X" in the center about midway of the travelled portion of the south side of St. Louis Avenue. The police report designates defendant's car as vehicle # 1. The front portion of that vehicle is at about the center of the circled "X" and parallel with the first mentioned parked car. Also in the circled "X" and to the east of vehicle # 1 there is a marking which represents a pedestrian. The vehicle and the pedestrian are apparently in contact. When it is also considered that the accident report form instructs the officer to "Show . . . [among other things] point of impact . . and measurement of tire marks . . . ." and that defendant testified that she moved "five or ten feet after the impact," the diagram could represent the path of the plaintiff and the point of impact determined by Officer Griffin as a result of his investigation. On retrial the court can make a determination as to whether the diagram depicts the scene of the accident as Officer Griffin found it. In the event that Officer Menke is permitted to testify with respect to the position of the cars and the pedestrian the location of the alley should also be determined. It would further appear that Officer Menke could properly testify as to the measurement of the tire marks.

The order of the trial court is affirmed and the case is remanded for a new trial.

CLEMENS, P. J., and KELLY, J., concur.

---

3. §§ 490.660—490.690 R.S.Mo.1969, V.A.M.S.