Gary SALLEE and Debbie Sallee, Plaintiffs/Appellants,

v.

John E. SHOCKLEY, D.O. and Lee's Summit Clinic, Inc., Defendants/Respondents.

No. WD 44014.

Missouri Court of Appeals, Western District.

March 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1992.

Application to Transfer Denied June 2, 1992.

Michael W. Manners, Paden, Welch, Martin & Alband, P.C., Independence, for plaintiffs/appellants.

James Bandy and Katharine S. Bunn, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for defendants/respondents.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Gary and Debbie Sallee appeal from a jury verdict rendered against them and in favor of Dr. John E. Shockley and Lee's Summit Clinic, Inc. in an action for medical negligence. Gary Sallee alleged that Dr. Shockley was negligent in releasing him after surgery without determining whether the anesthetic or the surgery would cause him problems. Debbie Sallee's claim is derivative, claiming damages for loss of consortium. The Sallees' sole point on appeal alleges that the trial court erred in failing to instruct the jury to disregard misstatements of law made by defense counsel during closing argument because such statements are presumptively prejudicial and the trial court had an absolute duty to purge the error. The judgment is affirmed.

On September 11, 1987, Gary Sallee went to see Dr. Shockley at the Lee's Summit Clinic for the examination and treatment of a hemorrhoid problem. Although Mr. Sallee had been a patient at the clinic on previous occasions and had undergone three separate minor surgical procedures, he had never seen Dr. Shockley before. Dr. Shockley examined Mr. Sallee and diagnosed an "external thrombosed hemorrhoid."

Dr. Shockley told Mr. Sallee that he felt that the problem needed to be treated and that the usual treatment for such a problem was to lance and drain the thrombosed hemorrhoid under a local anesthetic. After inquiring into any known drug allergies that Mr. Sallee might have had, Dr. Shockley asked the nurse to prepare a tray. The tray contained a scalpel and approximately 1½ cc's of 1% Xylocaine, a local anesthetic, in a 3 cc syringe. Although Dr. Shockley typically used only about 1 cc of Xylocaine while performing the procedure, he ordinarily had the nurse draw up 1½ cc's, an amount adequate for the procedure.

Dr. Shockley injected Mr. Sallee's hemorrhoid and the surrounding area with the

anesthetic, testifying that he made from two to four injections, although Mr. Sallee testified that he felt seven or eight sticks. After the area was deadened, Dr. Shockley made an incision in the thrombosed hemorrhoid and drained it. Dr. Shockley then packed the area with gauze and told Mr. Sallee to pull up his pants. After the procedure, Dr. Shockley gave Mr. Sallee his prescriptions and some general instructions on the care of the treated area. Dr. Shockley testified that Mr. Sallee was alert and well orientated. Mr. Sallee testified that he did not feel faint or light-headed during the procedure or after he left the office.

After leaving the clinic, Mr. Sallee sat for a moment in his truck. He noticed that his anal area was still numb but felt the gauze pads Dr. Shockley used to pack the area after the procedure. Mr. Sallee left the parking lot in his truck and drove off. After he had turned on to 50 Highway, he "got up to speed" and engaged his truck's cruise control. While driving along, Mr. Sallee suddenly began feeling tingly and sweaty as if he might pass out. This feeling continued only a few seconds and is the last thing Mr. Sallee remembers before he lost consciousness. The pickup truck he was driving went off of 50 Highway, crossing the median and entrance ramp before running into the side of a house. As a result of the crash, Mr. Sallee was diagnosed as having C6–C7 quadriplegia.

Mr. and Mrs. Sallee filed suit against Dr. Shockley and Lee's Summit Clinic, Inc. on February 11, 1988. The Sallees alleged medical negligence based upon the theory that Dr. Shockley released Mr. Sallee following the surgery without making a determination of whether he would have problems from the surgery or from the anesthetic. To support this theory, Mr. Sallee presented two expert witnesses on the issue of liability. Dr. W.C. Wiederholt, a neurologist and professor in the neuroscience department at the University of California at San Diego, testified that he believed that Mr. Sallee experienced a vasovagal syncope, a medical term for fainting caused by an insufficient blood supply to the brain. There are many factors that may cause a vasovagal syncope, among them, the amount of anesthetic used, pain, and relief from pain. Dr. Wiederholt testified that the majority of faints occur within the first 20 to 30 minutes following surgery and that it violates the appropriate standard of care for a doctor not to consider that a patient might experience vasovagal syncope after surgery.

Dr. William E. Whitley, an osteopathic physician with a family practice, testified that there were indications that Dr. Shockley used more anesthetic than that Dr. Shockley claimed was used. He also testified that Mr. Sallee's description of his condition was consistent with a rectal mucosal prolapse and not a single thrombosed hemorrhoid.

Dr. Shockley's expert witnesses disputed the testimony given by Dr. Wiederholt and Dr. Whitley. Dr. Clark Watts, a neurosurgeon who is Chief of the Division of Neurosurgery at the University of Missouri School of Medicine in Columbia and Chief of the Neurosurgical Service at University Hospital, testified that Mr. Sallee's faint was caused by a vasovagal reaction and that under the circumstances, this loss of consciousness was a very rare occurrence and totally unpredictable. Dr. John Heryer, a colon and rectal surgeon, testified as to the differences between a rectal mucosal prolapse and an external thrombosed hemorrhoid. He opined that Dr. Shockley's care and treatment of Mr. Sallee was consistent with the standard of care expected of physicians providing such treatment.

The verdict-directing instruction, No. 8,[1] instructed the jury that:

> Your verdict must be for Plaintiff, Gary Sallee, against Defendants, John Shockley and Lee's Summit Clinic, if you believe:
>
> First, Defendant, Shockley, released Plaintiff, Gary Sallee, following the surgery without making a determina-

---

1. Debbie Sallee's verdict-director for loss of consortium, No. 11, contained identical language in stating the claimed negligence.

tion as to whether or not said Plaintiff would have problems from the anesthetic or the surgery, and

Second, Defendant, Shockley, was thereby negligent, and

Third, such negligence directly caused or contributed to cause damage to Plaintiff, Gary Sallee.

During the closing arguments, defense counsel made the following statements regarding the verdict-director:

So there are three essential findings that you must make in order to return a verdict against Dr. Shockley.

The first is that Dr. Shockley released the plaintiff Gary Sallee following the surgery without making a determination as to whether or not plaintiff would have problems from the anesthetic or the surgery. What's interesting about the Court's instructions to you are those items that are no longer an issue in this case, items that have been talked about all week long but that you no longer need to be concerned with. The Court does not tell you that if you don't think that Dr. Shockley kept the plaintiff in the office for 20 minutes that you should return a verdict against him. Nothing in these instructions tells you to return a verdict against Dr. Shockley if you think he failed to keep him 20 minutes. That has not been submitted to you, that is not a claim in this lawsuit now.

The Court's instructions also say nothing about whether you should determine whether Mr. Sallee was given an abnormal or an excessive amount of local anesthetic. That is not a claim that's [sic] being submitted to you. You do not need to resolve that or decide that in order to reach your verdict in this case. The Court has not submitted that claim to you so it's irrelevant.

You do not need to determine whether Mr. Sallee had a rectal prolapse in this case, because the Court has not submitted that claim to you. It's no longer relevant to the things in this lawsuit.

At this point in the proceedings, Mr. Sallee's counsel made the following objection outside the hearing of the jury:

Your Honor, this is obviously an improper interpretation of the law. The only way the Court can—the argument can be made here is as far as the time and all of the elements and factors considered. And to say that the Court doesn't instruct on it and they don't have to consider what is obviously erroneous argument and an improper argument of the instructions. Because the jury has to return, has to consider all of the evidence. And as the Court well knows, all of that evidence is never going to be in those instructions.

The trial court sustained the objection. Defense counsel proposed that he would tell the jury to consider all of the evidence in regard to the instructions. Mr. Sallee's counsel agreed to this course of action and, after the proceedings returned to open court, defense counsel told the jury: "Ladies and gentlemen, in reaching your verdict, consider all the evidence and follow the Court's instructions. Read the instructions and determine what Judge Messina is telling you that you have to find in order to return a verdict against Dr. Shockley."

The jury returned a verdict in favor of Dr. Shockley. The Sallees appeal from that verdict.

■ The Sallees claim that the trial court erred in failing to instruct the jury to disregard misstatements of law made by defense counsel during the closing argument. Defense counsel told the jury that it need not be concerned any longer with whether Dr. Shockley kept Mr. Sallee twenty minutes after the surgery, gave Mr. Sallee an excessive amount of anesthetic or whether Mr. Sallee suffered a rectal prolapse. In effect, defense counsel told the jury that these issues were irrelevant and by doing so he misstated the law.

"[T]he permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments." *Heshion Motors, Inc. v.*

*Western Int'l Hotels,* 600 S.W.2d 526, 534 (Mo.App.1980). The ultimate issues to be decided by the jury according to the instructions were whether Dr. Shockley released Mr. Sallee without making the determination as to whether he would have problems with the anesthetic or the surgery, and if he did not make that determination, whether he was negligent by not doing so. In making that decision the jury was required to consider all of the evidence presented, including the evidence that defense counsel argued was irrelevant. This was a misstatement of law and beyond the permissible boundaries of closing argument.

■ The verdict-directing instruction quite properly only presented the ultimate issue necessary for the jury to decide. The wealth of evidentiary detail as to possible anesthetic dosages and effects, possible diagnosis and length of time required for observation of Mr. Sallee by Dr. Shockley were not proper issues for submission in an instruction as they were not ultimate issues. Proper instructions should only submit ultimate issues to the jury, not a welter of evidentiary detail. *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 878 (Mo. App.1984). The purposes behind such a rule are myriad; it avoids placing undue emphasis on certain evidence, avoids confusion and avoids the possibility of favoring one party at the expense of another. *Id.* In closing argument, defense counsel was in essence giving the jury a withdrawal instruction and usurping the prerogative of the trial court in instructing the jury. *See Nicholls v. Kammerich,* 626 S.W.2d 653, 659 (Mo.App.1981).

■ Having found that a misstatement of law was made by defense counsel, the question becomes one as to the adequacy of the relief accorded the Sallees by the trial court. As the Sallees point out, "it is highly improper for counsel, in his argument to the jury, to misstate the law." *Halford v. Yandell,* 558 S.W.2d 400, 411 (Mo.App. 1977). It is the duty of the trial court to promptly correct such misstatements of law made during closing argument. *White*

*v. Gallion,* 532 S.W.2d 769, 771 (Mo.App. 1975).

■ The Sallees argue that such duty was affirmative in the sense that the trial court should have addressed the issue instead of having defense counsel make the correction. It is axiomatic that the trial court has broad discretion in controlling closing argument and is in the best position to evaluate the effect of that argument. *Titsworth v. Powell,* 776 S.W.2d 416, 420 (Mo.App.1989). "While a trial court, because of its coign of vantage of the proceedings and their effect on the jury, has a large discretion in permitting, restraining and purging final argument, there is no room for the exercise of judicial discretion on an issue of law." *Carrel v. Wilkerson,* 507 S.W.2d 82, 86 (Mo.App.1974) (citations omitted). Where the trial court sustains an objection to improper argument and where no further relief is requested, nothing is left for review. *Welch v. Burlington Northern R.R. Co.,* 807 S.W.2d 226, 228 (Mo.App.1991).

■ In the instant case the trial court properly sustained the objection made to defense counsel's misstatement. Further relief was requested, discussed, agreed upon and delivered. No objection was made to the manner in which the relief requested was given. Defense counsel stated:

> Ladies and gentlemen, in reaching your verdict, consider all the evidence and follow the Court's instructions. Read the instructions and determine what Judge Messina is telling you that you have to find in order to return a verdict against Dr. Shockley. And what Judge Messina is telling you, that you must first find that Dr. Shockley released Mr. Sallee following the surgery without making a determination as to whether or not Mr. Sallee or the plaintiff would have problems from the anesthetic or the surgery.

The Sallees' contention that something more was necessary is unsupported by the cases that they cite. For instance, in *Carrel,* 507 S.W.2d at 85, the trial court allowed an improper argument to continue over objection. So too, in *White* the trial

court improperly overruled the objection to defense counsel's misstatement of law and allowed the argument to proceed. *White*, 532 S.W.2d at 771. In *Bradley v. Waste Management of Missouri, Inc.*, 810 S.W.2d 525, 528 (Mo.App.1991), the trial court properly sustained an objection to counsel's misstatements of law. However, counsel continued to make the same misstatements several times and the court did not instruct the jury to disregard such statements, nor did it take any further corrective action. *Id.* Similarly, in *Halford*, 558 S.W.2d at 411–12, an in depth analysis of the case law on misstatements of law in closing argument, examines which actions by a trial court constitute reversible error. The facts before this court are not shown to be such as would give rise to reversible error.

In the instant case, the trial court not only properly sustained the objection, but also accorded the Sallees the agreed upon relief. The jury was instructed to consider all of the evidence and follow the court's instructions. Thus, any error was effectively cured. The judgment is affirmed.

All concur.