Ronald COOK, III, by next friend Ronald COOK, Jr., and Ronald Cook, Jr., Plaintiffs–Appellants,

v.

Glenda WILLIS, Defendant–Respondent.

No. 19116.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 24, 1994.

L. Thomas Elliston, Elliston Law Offices, Webb City, for appellants.

Karl W. Blanchard, Jr., Blanchard, Van Fleet, Martin, Robertson & Dermott, P.C., Joplin, for respondent.

PARRISH, Judge.

This is an appeal from a judgment for defendant Glenda Willis in a negligence action. Plaintiff Ronald Cook III (Ronnie), by his father, Ronald Cook, Jr., as next friend, sought recovery in Count I for personal injuries he sustained as a result of being struck by an automobile driven by defendant. In Count II, plaintiff Ronald Cook, Jr., sought recovery for medical expenses incurred for Ronnie as a result of his personal injuries.

Plaintiffs allege the trial court erred in rulings it made on objections to questions asked during voir dire; in refusing to admit in evidence parts of defendant's deposition offered by plaintiffs; and in overruling plaintiffs' objection to part of defendant's closing argument. This court finds plaintiffs' claim of error with respect to the trial court overruling their objection to part of defendant's closing argument well taken. The judgment is reversed and the case is remanded for new trial.

On the afternoon of August 16, 1989, defendant, a neighbor of Ronnie's grandmother, Joan Cook, was driving her automobile in a westerly direction along Crow Street, the street that ran by Mrs. Cook's residence in Webb City, Missouri. She was traveling at a speed of 20 or 25 miles per hour.

Mrs. Cook and Ronnie's mother were sitting on the sidewalk in front of the house. Ronnie and his sister, Jessica, were playing nearby. Ronnie was 20 months old at the time. Mrs. Cook's vehicle, a Ford van, was backed into a driveway at the house. The back of the van was about 2 feet from Mrs. Cook's house. The front bumper was about 3 feet from the street. Ronnie was running back and forth around the van playing peekaboo with Tina Cook, his aunt.

Defendant drove past Mrs. Cook's house and waved. Mrs. Cook waved back. "A second or two" later, Mrs. Cook heard a thump. Ronnie had been struck by defendant's automobile.

When defendant waved to the people in front of Mrs. Cook's house, she turned her head to look at them. After waving, she again looked forward. She did not see Ronnie until after her car had struck him. Defendant stopped her car and got out of it. Ronnie was on the street by the curb.

Ronnie was taken by ambulance to St. John's Hospital in Joplin. Later that evening he was transferred to Freeman Hospital. Ronnie was released from Freeman Hospital August 18, 1989.

Defendant filed a third-party petition against Jeannie Cook, Ronnie's mother, alleging that she was negligent in providing care and supervision of Ronnie at the time he was injured; that she failed to take measures to prevent him from going into the street and coming into contact with defendant's vehicle. The third-party petition sought contribution or indemnity from Jeannie Cook in the event judgment would be entered against defendant.

At the close of all evidence, third-party defendant moved for directed verdict on the third-party claim. The trial court granted the motion and entered directed verdict in favor of third-party defendant Jeannie Cook on defendant's third-party claim against her.

■ During closing argument, after the trial court entered its directed verdict on the third-party claim against Ronnie's mother,

defendant's attorney told the jury defendant had not seen Ronnie before the accident. He added:

> But even so, even if she had seen a child over next to the house running around, they say the back of the van, he's still west of her. She can't see him; she doesn't know where he is. She's doing 20 miles an hour, which again, at least in Joplin, is what you're required to drive through the school zone. What else was she supposed to do? Stop?
>
> The parents want to say this is all [defendant's] fault. But they were right there, they knew the kid was running around. They knew that she was coming—

Plaintiffs' attorney objected to the argument on the basis that the issue of parents' fault had been removed from the case by the trial court's directed verdict in favor of Ronnie's mother on defendant's third-party claim. The trial court overruled the objection and told defendant's attorney to proceed.

Defendant's attorney added: "All you had to do was call his name and he put the brakes on." He explained, "And I would suspect that your common sense tells you that lots of little kids, when they're 12 and 16 and 18 months, 20 months, they mind pretty good when they hear their name."

Plaintiffs assert by their Point III that the trial court erred in overruling the objection to defendant's closing argument because the argument pursued a defense "outside the scope of the [trial] court's instructions." Plaintiffs contend the effect of the trial court overruling their objection was to permit defendant to erroneously tell the jury that Ronnie's parents were liable for his injuries and resulting damages; that this was contrary to the directed verdict dismissing the third-party claim.

Defendant counters that her argument did not propose that fault be cast on Ronnie's parents. She contends her attorney's closing argument suggested that if Ronnie's mother was unable to see the child, defendant was equally unable to see him; that, therefore, the injuries Ronnie sustained were not due to defendant's negligence. This court does not glean that meaning from defendant's attorney's statements.

Defendant's attorney told the jury, "The parents want to say this is all [defendant's] fault. But they were right there, they knew the kid was running around." The attorney suggested that the parents should have called the child's name, that this would have stopped him from entering the street and have prevented the accident.

This court construes the meaning of defendant's argument to be that the fault lay with the parents; that they were at fault in not watching the child and calling out to him. The argument suggests that the cause of the accident was failure of the parents to take action rather than the negligence of defendant.

Defendant's argument was improper in two respects. It spoke of the parents' presence at the scene of the accident, although the evidence was that the father was not there—the only parent who was there was Jeannie Cook, Ronnie's mother. It further argued an issue that the trial court had ruled, by directing a verdict on the third-party claim, was not supported by the evidence.

■ The field of jury argument is broad. However, it is not so broad as to permit an attorney to go beyond the record or the issues framed by the jury instructions. It is not permissible to urge prejudicial matters or a defense that the law does not support. *Carrel v. Wilkerson*, 507 S.W.2d 82, 85 (Mo. App.1974).

In this case the issue for the jury to decide was whether defendant was negligent. The jury was not asked to decide if Ronnie's mother (or his father) was negligent. By directing a verdict in favor of Ronnie's mother in defendant's third-party claim, the trial court decided, as a matter of law, that the evidence did not support a defense or claim that Ronnie's injury was her fault.

The error claimed in Point III was sufficiently raised by plaintiffs' objection when the argument was made at trial and in their motion for new trial. The trial court overruled the objection and thereby tacitly approved defendant's contention that the acci-

dent was the fault of Ronnie's parents. The trial court committed error in doing so. "[T]here is no room for the exercise of judicial discretion on an issue of law." *Carrel, supra,* at 86. *See also Titsworth v. Powell,* 776 S.W.2d 416, 422 (Mo.App.1989).

■ Even when there is trial error, an appellate court may not reverse a judgment unless it determines the error was prejudicial; that the error materially affected the merits of the action. Rule 84.13(b). "Determining the prejudicial effect of final argument is a matter within the discretion of the trial court, and the trial court's judgment on that matter will not be disturbed unless there was an abuse of discretion." *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 434 (Mo. banc 1985).

Here, the argument of defendant's attorney was based on both a misstatement of facts and a misstatement of law. He talked in terms of both parents being present at the accident when only the mother was there, and he informed the jury that the accident was attributable to fault of the parents. The effect of the argument, and of the trial court overruling plaintiffs' objection, was to negate the prior ruling that precluded the jury from considering whether any fault was allocable to Ronnie's mother. The trial court's determination that the closing argument of defense counsel was not prejudicial error was an abuse of discretion. Point III is granted.

■ Defendant contends, nevertheless, that plaintiffs failed to make a submissible case and are, therefore, not entitled to a new trial. *See Grippe v. Momtazee,* 696 S.W.2d 797, 799 (Mo. banc 1985). This court finds that the record on appeal reveals sufficient evidence from which reasonable jurors could find that defendant failed to maintain a careful lookout and was thereby negligent, and that the injury to Ronnie was a result of that negligence. Plaintiffs made a submissible case.

Having found Point III in favor of plaintiffs and having further found that a submissible case was made, plaintiffs are entitled to a new trial. It is not necessary to address plaintiffs' remaining points in order to dispose of this appeal. However, because an-

other trial is likely, it is appropriate to review principles that the record suggests may again be relevant upon retrial.

■ Plaintiffs' Point I is directed to a question defendant posed on voir dire. At the beginning of his inquiry of prospective jurors, defendant's attorney told the panel that he had additional questions but he would ask his last question at the outset. He then inquired, "[L]adies and gentlemen, having heard a little bit about what the case is about, knowing who the parties to this lawsuit are, would each of you be satisfied having yourselves sit on this jury if you were one of the parties?"

Plaintiffs' attorney objected on the basis that the question was improper; that it asked the jurors to place themselves in the position of the parties to the litigation. The trial court overruled the objection.

After asking further questions, defendant's attorney concluded: "Folks, I'm now to my last question, and I will ask it again. Knowing a little about what this case is about, who the parties are, would each of you be satisfied having yourselves sit as jurors in this case if you were one of the parties, either one, plaintiff or defendant?" Plaintiffs' attorney again objected "for the record." The trial court overruled the objection.

■ As plaintiffs suggest, the qualification of a juror is an issue for determination by the trial court, not by the juror. *Ray v. Gream,* 860 S.W.2d 325, 333 (Mo. banc 1993). However, as observed in *Ray,* "[I]t is proper for the trial court to consider the juror's testimony concerning his or her ability to act impartially." *Id.* at 334.

This court does not believe the trial court's ruling on plaintiffs' objection was erroneous. Although the transcript on appeal does not include all of the voir dire, it is apparent that defendant's attorney asked questions in addition to the two "last questions" to which plaintiffs objected. The "last question" could be understood as asking the panel members whether they were aware of any additional matters relative to the nature of the case that might affect their abilities to serve as jurors. Had there been affirmative responses, defendant's attorney or the trial court

could have inquired further to obtain additional information from which the trial court could have assessed the qualifications of any prospective juror who so answered.

 The remaining point, Point II, is directed to the trial court's refusal to allow plaintiffs to read parts of defendant's deposition as evidence at trial. Plaintiffs argue that they should have been permitted to use the parts of defendant's deposition they offered because the statements were admissions of a party opponent; that the deposition was taken pursuant to Rule 57.07 for use as evidence. Although various exhibits were admitted in evidence, plaintiffs would have preferred to have had the exhibits admitted through the use of excluded parts of the deposition. Plaintiffs argue that they should have been permitted to present their case in any judicially acceptable manner they wished.

At oral argument before this court, the attorneys acknowledged that all the information that was contained in the parts of the deposition the trial court omitted was eventually admitted in evidence in some form or another. "Any error in the exclusion of any evidence is ... harmless if the same facts are shown by other evidence and exhibits." *Around the World · Importing, Inc. v. Mercantile Trust Co., N.A.,* 795 S.W.2d 85, 89 (Mo.App.1990). For that reason, Point II is not a determinative issue.

The issue of the use of defendant's deposition may arise at a new trial. Rule 57.07(a)(2) provides that a deposition of a party may be used by an adverse party for any purpose. Defendant argues that the language "for any purpose," as used in Rule 57.07(a)(2), means "so long as it is an admission against interest." *Around the World, supra,* citing *Teachenor v. DePriest,* 600 S.W.2d 122, 125 (Mo.App.1980). However, this court does not read *Teachenor* that broadly.

The plaintiff in *Teachenor* had read portions of defendant DePriest's deposition as permitted by Rule 57.07(a)(2). He then called DePriest as a witness. The plaintiff's questions of DePriest were limited to whether the turn signal on DePriest's car had been on before the accident occurred that was the subject of the lawsuit. On cross-examination DePriest took a position contrary to that taken when he was deposed. At the conclusion of DePriest's testimony, the plaintiff offered other portions of DePriest's deposition as admissions against interest.

The trial court sustained an objection that the plaintiff was attempting to impeach her own witness and that the "plaintiff had the opportunity to examine DePriest on the stand on the points in question and, that by failing to do so, plaintiff forfeited the right to read the portions of the deposition in question." 600 S.W.2d at 125.

This court reversed and remanded the case for a new trial for the reason that "Rule 57.07(a)(2), V.A.M.R. states that 'the deposition of a party ... may be used by an adverse party for any purpose.'" *Id.* This court concluded that the offering of the deposition testimony of DePriest as admissions against interest, under the facts, was proper; that the trial court erred in sustaining the objection to the testimony and in denying the offer of proof that followed.

*Teachenor* held that deposition testimony of a party-opponent may be used as admissions against interest. It did not, however, limit use of the deposition of a party-opponent to that purpose. On retrial of this case, the trial court should not limit the use of defendant's deposition testimony to providing evidence of admissions against interest.

The judgment is reversed. The case is remanded for a new trial.

GARRISON, P.J., and CROW, J., concur in separate opinions filed.

GARRISON, Presiding Judge, concurring.

I concur in the result reached by the principal opinion which concludes that the portion of Defendant's closing argument referred to was error in part because the trial court had directed a verdict on Defendant's third-party petition against the mother of Ronnie. In my opinion, this factual scenario distinguishes this case from others permitting a defendant to argue that some other party was the cause of an accident. *See Cook v. Cox,* 478 S.W.2d 678, 682 (Mo.1972). For the same reason, this case is also distinguished

from cases such as *Lewis v. Bucyrus–Erie, Inc.*, 622 S.W.2d 920 (Mo. banc 1981). In that case, the Missouri Supreme Court held that although the trial court had refused to instruct on plaintiff's contributory fault, defendant could argue that plaintiff recognized the danger in riding a crane because such comments were not necessarily applicable only to contributory fault but could apply, as well, to the issue of whether plaintiff was using the crane in the manner reasonably anticipated, an element of his case. *Id.* at 927.

CROW, Judge, concurring.

I concur.

I agree with the principal opinion's treatment of Points I and II.

I agree that Point III is meritorious and warrants a new trial for the reasons set forth in the principal opinion and the concurring opinion of GARRISON, P.J.